680

## In re KLEIN'S OUTLET, Inc.

District Court, S. D. New York.
Jan. 27, 1944.

See also 136 F.2d 986.

Morris Okoshken, of Jamaica, N. Y.
(Arthur Morris and Abraham Lillienthal,
both of New York City, of counsel), for
Rose Klein.

Ludwig M. Wilson, of New York City,
for petitioning creditors.

William R. Klein, pro se.

BRIGHT, District Judge.

Rose Klein petitions for a review of an
order made by a referee in bankruptcy on
December 17, 1942, which (1) approved
and confirmed an offer made by William R.
Klein on behalf of all defendants in a
stockholders' action pending in the Su-
preme Court of the State of New York,
instituted by her on behalf of Klein's Out-
let, Inc. (which was not then in bankruptcy)
against Klein's Outlet, Inc., William R.
Klein, David Klein, Edward Selkow, Isi-
dore Klein, Klein's 34th Street, Inc., and
others, to settle that action, (2) ordered
that the trustee Simon B. Rosenberg be
authorized and directed forthwith to settle
and discontinue the State Court action in
accordance with the offer and deliver re-
leases, (3) to take such steps in this court
and in the State Court to effectuate the
order, (4) enjoined Rose Klein and the de-
fendants and their attorneys from further
proceedings in the action unless and until
otherwise ordered, and (5) permitted Rose
Klein's attorney to apply to this court for
an allowance for his services rendered in
that action to cover the value thereof to
the bankrupt estate.

This bankruptcy matter has been so often
before the judges of this court and the Cir-
cuit Court of Appeals, that I think a chron-
ology of those occasions may help some-
what in the determination of the issues.

In March 1940, the action mentioned was
commenced in the State Court. A trial was
had before Mr. Justice Samuel I. Rosen-
man, who decided in favor of Rose Klein
and found, among other things, that the
said William R. Klein was the true owner
of thirty shares of the corporation's stock,
although issued and in the name of the de-
fendant Isidore Klein (it is here admitted
that said William R. Klein is the beneficial
owner of controlling stock); that the af-
fairs of the corporation were conducted
and carried out by William R. Klein and
David Klein, who had usurped and exer-
cised the functions and powers of a board
of directors, though never elected as such;
that it maintained a retail shoe store on 33d
street in this city; that William R. Klein
and David Klein opened another retail
store on 34th Street; that the defendants
William R. Klein, David Klein, Selkow,
and Isidore Klein purchased a large quan-
tity of merchandise for the 34th Street
store in the name of and upon the credit of
the corporation, had it shipped to a ware-
house then used by the corporation and in-
formed the sellers that the same was being
purchased for the corporation; that on the
night of January 3, 1940 and the early
morning of January 4, 1940, the named de-
fendants caused the warehouse and the 33d

Street store to be entered, and large quantities of merchandise moved therefrom to the 34th Street store; that during the months of January, February, and March 1940, the 34th Street store acquired additional shoes upon the credit of the corporation; that by the acts mentioned, the credit of the corporation was seriously impaired, judgments were recovered against it, it was compelled to seek aid in this court (it appears that on March 29, 1940, shortly after the action was started, the corporation filed a petition for arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., which petition on objection of creditors was denied and the proceeding dismissed in July 1941); that the 34th Street corporation and the defendants, for the benefit of the 34th Street store, in which plaintiff had no interest, simulated, copied and imitated the corporation's business, diverted trade from it, instructed employees in the 33d Street store to send customers to the 34th Street store, and utilized the time of such employees paid by the corporation for the benefit of the 34th Street store. It was further found that the said defendants had mismanaged the funds and property of the corporation in the manner stated and by the preparation of spurious and illegal minutes of meetings of the bankrupt in an attempt to cover up the said transactions, as a result of which the corporation has valid claims against the individual defendants for damages. A judgment was entered on December 6, 1940, which referred the matter to Helen L. Buttenweiser, Esq., to hear and report the amount of the indebtedness of the 34th Street corporation to Klein's Outlet, Inc., and any loss or damage suffered by the latter, that judgment be entered against the defendants for the amount of such indebtedness and damages, which should include the costs and disbursements of the reference as well as the costs and disbursements of the action, and restrained the defendants from a continuance of the illegal acts. An appeal from that judgment has since been dismissed so that the judgment now stands in full force and effect.

Shortly after the entry of judgment and on December 30, 1940, there was obtained in the arrangement proceeding an order to show cause with a stay of proceedings of the State Court action, why an offer of settlement by said William R. Klein should not be accepted. The referee approved, and on review his order was set aside by Judge Clancy, and thereafter the arrangement was dismissed. After that two motions were made in the State Court to compel acceptance of the offer, both were denied by Justice Rosenman, and his decision affirmed on appeal.

On September 24, 1941, that Justice appointed a receiver of Klein's Outlet, Inc.

On September 25, 1941, the day after, an involuntary petition was filed against the alleged bankrupt and the usual restraining order was signed by me. Upon my attention being called to the pendency of the action in the State Court and the appointment therein of Harold L. Lipton as receiver, I modified the stay so as to leave the custody of the assets of the bankrupt in the control of the State Court receiver until some receiver or trustee should be appointed in this court, and to permit the reference under the State Court judgment to proceed. The order was signed by me on October 9, 1941.

On October 3, 1941, a second petition for an arrangement under Chapter XI of the Bankruptcy Act was filed by the bankrupt, notwithstanding that its previous petition for the same relief had been denied because, among other things, it had made fraudulent statements of its financial condition.

On October 14, 1941, Lipton, as receiver, petitioned for leave to intervene in the involuntary bankruptcy proceeding, to dismiss the debtor's plan of arrangement under Chapter XI, and to bring to trial the issues raised by the answers to the involuntary petition for bankruptcy. The application was referred by Judge Hulbert to the referee, and was denied by the latter on November 17, 1941.

On November 10, 1941, an order to show cause was signed by Judge Goddard why my order of October 9, 1941 should not be vacated, modified or clarified, and another stay was obtained of the proceedings in the State Court. That motion was in all respects denied, with my memorandum that

notwithstanding the obvious intent of the order of October 9th was to permit the State Court action to proceed under the judgment, ex parte stays had been granted preventing that very thing; that the then motion was an effort to do likewise, and that it seemed to me that the practice should stop. An order denying the motion was entered on December 12, 1941.

On November 19, 1941, the bankrupt petitioned that a meeting of the creditors be called to act again upon an offer of settlement of the State Court action, which it states William Klein was willing to make. The petition had annexed to it an order to show cause which contained another stay of the State Court proceedings. Judge Leibell on November 25, 1941 refused to sign the order to show cause and stay but without prejudice to its renewal upon notice to the individual plaintiff in the State Court action and after I had decided the motion last referred to.

Petitions for a review of the orders of the referee denying the motion of Lipton as receiver to intervene were filed on or about November 14, 1941. Judge Bondy on February 26, 1942 reversed the referee's determination denying Lipton's petition to intervene, and affirmed the determination denying the motion to dismiss the arrangement proceeding, and made an order to that effect on June 1, 1942.

On June 6, 1942 the referee made an order granting the involuntary petition and adjudicated Klein's Outlet, Inc., a bankrupt. Lipton, in the meantime, on April 16, 1942, had been appointed by Judge Bondy temporary receiver.

A petition to review the adjudication by the referee of June 6, 1942 was filed, and Judge Goddard by a memorandum dated July 28, 1942, confirmed the referee's action.

The referee subsequently substituted the trustee in bankruptcy as the sole party plaintiff in the State Court action, and that was done by an ex parte order of the State Court obtained in that action. A petition for a review of that determination was made returnable before me, and on July 25, 1942 I decided that the trustee should be added as a joint party plaintiff with

Rose Klein and modified the referee's order accordingly. D.C., 48 F.Supp. 416.

An appeal was taken to the Circuit Court of Appeals from the order of Judge Goddard, confirming the orders of the referee striking out the answers of Lipton and Rose Klein to the involuntary petition and adjudicating the corporation a bankrupt, and granting the motion of the trustee to be substituted as plaintiff in place of Rose Klein in the State Court action, as well as from my order modifying the order of substitution so as to make Rose Klein and the trustee joint plaintiffs. The Circuit Court reversed these orders, and remanded for further proceedings in accordance with its opinion. Klein v. Nu-Way Shoe Co., 2 Cir., 136 F.2d 986, 989. That opinion is that in accordance with Judge Bondy's rulings, Rose Klein had an unqualified right of intervention in the involuntary bankruptcy proceeding, to file answers and contest the matter fully; that "the court clearly had substantial grounds for belief that appellant (Rose Klein) would not be adequately represented by the directors and officers of Klein's Outlet. It was thoroughly conceivable that they would neglect to contest the federal bankruptcy with a view to a favorable settlement of the state court accounting, regardless of any collusion on the part of petitioning creditors. * * * Nor did the corporation's consent to an involuntary adjudication render the allegations of appellant's answer moot. It could not convert the proceeding into one for a voluntary adjudication. * * *; and the corporation's insolvency and its preferential payments still had to be proved. * * * Adjudication must accordingly be set aside and the action returned for a trial on these issues. * * * Since the adjudication is set aside, Lipton may resume his receivership of the corporation—now beyond challenge * * *. Our disposition of the case also disposes of the order appointing the trustee in bankruptcy as coplaintiff with appellant in the prosecution of the state suit. That order falls with the falling of the order of adjudication". The mandate of the Circuit Court of Appeals was filed in this court on November 4, 1942.

Pending this appeal, an order was made by Judge Hulbert ex parte on August 24, 1942, removing to this court the action brought by Rose Klein in the State Court. Judge Conger on October 27, 1942 vacated that order without prejudice to the right to so move upon notice to Rose Klein. On October 24, 1942, the attorney for the defendants in the State Court action moved to restore in full force the order of Judge Hulbert removing the State Court action to this court. That motion was denied by Judge Bondy on October 5, 1942, his order thereon being made on November 17, 1942.

Other proceedings were had thereafter which are not of any great moment except as furnishing further evidence of the multitudinous motions and hearings indulged in by both parties. Even after the present petition for a review was presented to me, and while I was considering the same, a motion was brought on by Rose Klein before Judge Hulbert (1) to dismiss the involuntary petition herein without amendment, or (2) if amendment be allowed that she be permitted to answer anew and to demand a jury trial, (3) that the entire bankruptcy proceeding be referred to another referee, and (4) that the trial of the issues raised by the answer to the involuntary proceeding be stayed until the reference in the State Court action had been concluded. At about the same time, the original referee disqualified himself. Judge Hulbert made an order on November 16, 1943, appointing another referee, referring the motions to dismiss the involuntary petition and for leave to plead anew in case of an amendment to the new referee, together with all other matters including the petition for an arrangement, and denied the application for a stay pending the completion of the reference with leave to renew after the determination by the referee of the matters referred to him under subdivisions (1) and (2) above mentioned. At the same time Judge Hulbert also denied a motion by Lipton as receiver, to expunge from an order made by Judge Coxe on March 15, 1943, a provision discharging Lipton as receiver.

I think it is obvious that from the very beginning of the State Court action William R. Klein and his codefendants have been endeavoring in every way possible to avoid a determination adverse to them. Almost every move seems to have been timed for that purpose. In the same month that the action was commenced, a petition for arrangement was filed and later dismissed. The schedules in that proceeding show a solvent debtor. In the same month that the judgment was entered, a motion was made by an attorney, later the attorney for the petitioning creditors on the involuntary petition, to compel the acceptance of the offer of settlement of William R. Klein. After some period of time had elapsed, the State Court filed its memorandum that it would appoint a receiver. The day after that an·announcement appeared in the Law Journal the same attorney filed a petition for involuntary bankruptcy. It appears in the papers that for his services in the arrangement proceeding, really those rendered for the benefit of William R. Klein, he was paid by check of the alleged bankrupt which he shortly after claimed was insolvent. Of course, he has an explanation for that, but his testimony fails to explain; it merely entangles further. Stay after stay of the proceedings in the State Court were obtained, two motions were made in that court to compel a settlement and denied, two at least of the proceedings under Chapter XI have been started, and one is still pending, in which offers were made to the creditors but not to any stockholder. It is obvious that the State Court does not think much of the settlement proposed by the defendant whose wrongdoing along with others precipitated the State Court action.

The present proceeding to compel the acceptance of the offer reveals a further attempt to avoid the consequence of the wrongdoing which William R. Klein and his codefendants have been found chargeable with in a court of competent jurisdiction. He now offers in full settlement of that liability $424 and a waiver of five claims which are, he says, "existing and arising solely because of the terms of the interlocutory judgment" in the State Court. Three of those claims have been filed by David Klein, a codefendant, for $1,475.29, $1,252.36 and $4,500, respectively. There was no adjudication in his favor in the

State Court but rather to the contrary; the claims mentioned were not adjudicated in that action and, as a matter of fact, were never mentioned in any schedules filed in these proceedings. The fourth claim is asserted in favor of Klein's 34th, Inc., for $5,000, one of the offending defendants in the State Court, and the same remarks may be made as to that claim as have been made about the claims of David Klein. The fifth claim to be waived is that of the offerer, and rests, it is said, upon a stock certificate. What stock certificate is not mentioned. He had avoided registration of any stock in his own name in the affairs of the alleged bankrupt. No mention is made in the offer of another claim filed by him aggregating some $7,000 or $8,000, which is to be retained in full vigor with the obvious purpose of endeavoring to recoup in this proceeding what he may give up in the so-called offer. This claim, too, has never been scheduled nor has it been adjudicated in his favor, in the State Court or otherwise. The only claim ever scheduled in his favor was one for borrowed money aggregating $1,423.42. He computes the amount due "to the bankrupt under the judgment" (he thus, with the aid of counsel, arrogates to himself the decision of a matter which a court of competent jurisdiction has submitted to a competent referee) at $424 covering certain bankruptcy costs charged against the defendants in the accounting submitted by them in the original offer of settlement. As has been shown, the costs in the action as well as those of the reference are assessed against him and the other individual defendants, and from the papers submitted they appear to be largely in excess of $2,000.

The hearings in the State Court have not been completed. Prima facie under the judgment there, certainly entitled to be recognized and respected here, a valid and substantial claim exists against the offerer and his codefendants, the offerer, it is said, being the only one financially able to pay. The evidence submitted before the referee upon this application consists mostly in conclusions and arguments drawn by both sides from the evidence submitted before the referee in the State Court action, along with some explosive and accusatory adjectives which interest but do not convince. The obvious purpose is to seek a trial here of what is now being tried out before the referee in the State Court. From those contradictory contentions, based upon the record in a court capable of determining the issue, the referee here has been asked to determine that the settlement is adequate and reasonable and for the best interest of the estate. In order to do so, he must have been required to determine the very facts which are at issue in the State Court, not upon oral testimony, but upon affidavits submitted by opposing counsel which contain very little evidence personally known to the affiants, but rather voluminous arguments upon what is said to have been testified to by others. It seems to me that it is impossible to determine what the truth is from the records submitted. And if it is possible, it does not seem to me that any such determination should be made as to what will be the result of a case now pending undetermined and only partly tried in the State Court. Certainly this ought not to be attempted until after the determination of the litigation there.

That suit is for the benefit of the corporation now alleged to be a bankrupt. It had either refused to bring it, or because of the improper and illegal control by the individual defendants, it could not. The State Court has so decided. Under the circumstances, therefore, its position in that litigation should be entirely neutral, and certainly not in favor of one who is not a stockholder of record or a director but who has been found to have illegally damaged it. The effort to benefit it in that action has thus far been carried on without expense to it. Whatever counsel fees or expenses have been incurred in its behalf, if any, seem to have been incurred in an attempt to uphold the hand of William R. Klein and his associates, whose wrongdoing has been condemned severely by a capable judge. There is no adequate reason that I can see why there should be any attempt in these proceedings to pull their chestnuts out of the fire. Administrative necessity does not compel a settlement on the basis suggested by Klein. It has been the administrative tactics of delay im-

spired and promoted by the wrongdoing defendants which has so long deferred the determination of the merits of that action. There is no need here for a duplication of the effort now being made in the State Court action. There is less need for its attempt in view of the inquiry now being conducted by that court. Creditors who seek to exclude stockholders from any part in the estate, or whose efforts would so result, based upon an offer such as this, and from the source from which it emanates, it seems to me, are not to be given the right of way, particularly where such exclusion would or might result to the benefit of the ones charged with such serious wrongdoing. It is not the creditors that those wrongdoers are thinking of but their own welfare.

It is asserted that this court, in the exercise of its bankruptcy jurisdiction, should not step aside in deference to the State Court; that it has full power to decree a settlement where there is no opposition by the creditors or where they are agreeable. That might be so in a proper case, which this is not. As is said by Evans, C.J., in Re Van Camp Products Co., 7 Cir., 95 F. 2d 206-209, certiorari denied Shubrick v. Van Camp Products Co., 305 U.S. 605, 59 S.Ct. 65, 83 L.Ed. 384: "Situations of this kind (where compromises should be rejected) occasionally arise where officers and directors of the corporation which is in receivership or in bankruptcy, have been derelict in their duties or guilty of illegally enriching themselves at the expense of the corporation and who are entrenched in office and control the board of directors and who are able to make a specious argument in favor of a compromise which would relieve them of a large part of their liability. There is present in such cases, an element not here presented, to-wit, a compromise with a wrongdoer—with a trustee untrue to his trust."

And it is to be noted that the referee himself gives no reason, adequate or otherwise, why the offer should be approved except that he is of the opinion that it should be. Whether or not the claims to be waived, or the claim of William R. Klein to be left unchallenged, are valid claims does not seem to have been determined. Without these afterthought claims the debtor, on the face of other schedules, seems to be solvent.

While it may not be decisive of this question, it is not to be forgotten that Rose Klein was completely authorized to sue in the State Court in view of the failure or inability of the corporation to do so, the latter caused by the wrongdoing of the individual defendants there named. In that court, she has the right to control the action and to compromise it or discontinue it at pleasure. She, therefore, has a distinct interest in it. It is at least doubtful whether she can be compelled to discontinue or forego whatever recovery she may prove she is entitled to there. Planten v. National Nassau Bank, 174 App.Div. 254-259, 160 N.Y.S. 297, affirmed Planten v. Earl, 220 N.Y. 677, 116 N.E. 1070; Earl v. Brewer, 248 App.Div. 314-316, 289 N.Y. S. 150, affirmed 273 N.Y. 669, 8 N.E.2d 339; Johnson v. Ingersoll, 7 Cir., 63 F.2d 86, 87. The State Court has twice denied a settlement upon the offers made by William R. Klein. Its denial must have some significance. I cannot understand why this court should overrule it or decide exactly to the contrary. Its action, as well as the fact that it is now trying to determine, as it has the right to do, what these individual defendants should pay, compels my conclusion that the acceptance of the offer is not for the best interest of the estate and does not have my approval.

The petition for a review is sustained and the order of the referee is set aside. An order hereon may be settled on notice.