In re Wavalene N. BARNES,
Debtor/Appellant.

In re Abel MONTANO,
Debtor/Appellant.

Civ. A. Nos. 80–1540, 80–1728
and 80–2227.

United States District Court,
District of Columbia.

April 22, 1981.

George F. Bason, Jr., Washington, D. C., for debtor/appellant.

Cynthia Niklas, Washington, D. C., Francis P. Dicello, Alexandria, Va., for appellee.

## MEMORANDUM AND ORDER

BARRINGTON D. PARKER, District Judge.

In these consolidated appeals, the appellants, Wavalene N. Barnes and Abel Montano, urge reversal of both procedural and substantive rulings of the Bankruptcy Court. The appellants had petitioned that Court for Debt Adjustment Plans under Chapter 13 of the new Bankruptcy Code.* The Court determined that venue was improper in each proceeding and ordered transfer to the districts in which the debtors were domiciled. Barnes resides in Maryland and Montano in Virginia.

Because these orders were appealed to this Court, the bankruptcy judge issued a stay and proceeded to consider the merits of each plan. He then determined that Ms. Barnes' repayment plan, which provided for a 1% repayment of her debts to unsecured creditors, failed to meet the "good faith" requirement for confirmation under 11 U.S.C. § 1325(a)(3). Finding further that she was not financially able to make even these payments, *see* subsection (a)(6), the judge converted the case into a Chapter 7 liquidation proceeding. Barnes appeals the rejection of her plan as not in good faith and the court's conversion of her petition to a Chapter 7 proceeding *sua sponte.* The bankruptcy judge also rejected Mr. Montano's repayment plan, finding that his proposal for 100% repayment of unsecured debts guaranteed by co-signers, but only 1% repayment of other unsecured debts unfairly discriminated among unsecured claims in violation of 11 U.S.C. § 1322(b)(1). The judge also found, as with Ms. Barnes, that the 1% repayment plan was not offered in good faith. Montano was ordered to submit a new confirmation plan. Both of these proceedings were stayed pending the decision on appeal.

This Court concludes that, because the bankruptcy judge proceeded to the merits of the debtors' claims, the venue determination is moot and need not be addressed on appeal. After evaluating the briefs of the parties and the records below, the Court determines that the bankruptcy judge erred in ruling that the Chapter 13 plan must provide meaningful repayment to unsecured creditors to meet the good faith requirement of section 1325(a)(3). However, the Court affirms the ruling that appellant Montano's classification and repayment plan unfairly discriminated against creditors who held his debts without a co-obligor. The cases are remanded for appropriate resolution of the proceedings.

I.

Wavalene Barnes filed a Chapter 13 Debt Adjustment Plan in December 1979. She has two dependent children and is employed as a secretary in a government agency. Her net monthly income is $749 and she lists monthly expenses of $658. Unsecured indebtedness totals $8,008, while her secured debts are approximately $2,400. She proposed to repay her debts at a monthly rate of $91 for three and a half years, providing 100% repayment to secured creditors to the extent of their security interests and 1% repayment of unsecured debts.

Abel Montano filed a petition and plan seeking Chapter 13 relief in February 1980. His plan anticipates $949 in net monthly wages from employment as a government clerk. He lists expenses of $749 a month for his wife, dependent child and himself. Montano proposed under the plan to repay $31,507 in unsecured indebtedness from the remaining $200 in monthly income. The debtor's plan provided for 100% repayment of approximately $7,000 in claims guaranteed by cosigners and a 1% repayment of the remaining $24,507 in claims of creditors that were not guaranteed by a cosigner.

II.

Under the new Bankruptcy Code, a Chapter 13 Debt Adjustment Plan must

* Public Law 95–598, 92 Stat. 2549 (1978).

comply with the conditions of 11 U.S.C. § 1325(a), which in part require that:

\*　\*　\*　\*　\*　\*

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;

\*　\*　\*　\*　\*　\*

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

If these conditions are met, confirmation of the plan is mandatory. *S.Rep.* No. 95–989, 95th Cong.2d Sess. 142 (1978); *H.R.Rep.* No. 95–595, 95th Cong. 1st Sess. 430 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787. The purpose behind Chapter 13 is to give the debtor a fresh start by providing him an opportunity to repay all or a percentage of his debts in full settlement of creditors' claims, while enabling the debtor to maintain support of himself and of his family. *H.R.Rep.* at 117–118. The provisions of Chapter 13 also insure that this favorable treatment of debtors does not harm creditors: under subsection (a)(4), a repayment plan can only be approved where it provides that each unsecured creditor will receive at least the amount he would receive in a Chapter 7 liquidation proceeding.

The "good faith" requirement of subsection (a)(3) was read by the bankruptcy judge to require that the debtor's plan under Chapter 13 provide a "meaningful" repayment to unsecured creditors. A 1% payment plan was rejected by the Court under this standard as only de minimus. Support for this conclusion is drawn from a statement in the House Report which provides that one purpose of Chapter 13 is to provide *significantly* less losses to creditors than

they would suffer in a Chapter 7 proceeding. *H.R.Rep.* at 118. The judge also relied on a number of other bankruptcy decisions that have read "good faith" to require that a meaningful repayment to creditors is a *"quid pro quo"* for the liberal discharge treatment under Chapter 13. *See e. g.,* In re *Howard,* 3 B.R. 75 (Bkrtcy.S.D.Cal.1980); In re *Bloom,* 3 B.R. 467 (Bkrtcy.C.D.Cal. 1980).

This Court finds support for the bankruptcy judge's reading of the Act's legislative history. However, nothing in the Bankruptcy Code suggests that "good faith" as used in section 1325(a) was intended to depart from the term's traditional meaning of honesty in fact or honesty of intention. *See* 5 *Collier on Bankruptcy,* ¶ 1325.01[2][C] at 1325–8 (15th ed. 1979). Indeed subsection (a)(4) sets up a standard for evaluating the sufficiency of a Chapter 13 plan's repayment to unsecured creditors. This standard, known as the "best interest of the creditors test," which requires that creditors receive at least what they would receive in a liquidation proceeding, "is the *only* criteria specifically aimed at the protection of the holders of allowed unsecured claims under Chapter 13." 5 *Collier on Bankruptcy,* ¶ 1325.01[2][D][a] at 1325–9. *Accord,* In re *Cloutier,* 3 B.R. 584 (Bkrtcy.D. Colo.1980). The statute does not indicate that the repayment must provide a substantial benefit to creditors over a Chapter 7 liquidation; it "requires only that creditors receive more than they would if the debtor went into straight bankruptcy." *H.R.Rep.* at 123–124, U.S.Code Cong. & Admin.News 1978, p. 6084.

█ The good faith provision does not address the amount of repayment at all. Rather, good faith is lacking under section 1325 "only in those unusual cases in which there has been an abuse of the provisions, purposes, or spirit of Chapter 13." In re *Cloutier,* 3 B.R. at 584. As the Bankruptcy Court noted in In re *Terry,* 3 B.R. 63, 66 (Bkrtcy.W.D.Ark.1980):

This Court believes that it will bode ill for the Bankruptcy Courts to use the

requirement of "Good Faith" as a peg from which they spin a web of nebulous judicial requirements for confirmation which have not been made by Congress. In an area fraught with enmity and misunderstanding as is created by discharge of debts in bankruptcy, this Court is reticent to tack onto the work of Congress its own notions of what debtors ought to do in order to be afforded discharge from their debts.

■ Indeed, reading a "meaningful" repayment requirement into the good faith provision of section 1325 would lead to a result clearly inconsistent with the liberal discharge provisions of Chapter 13 in the case of appellant Barnes. As the Court below noted, her circumstances were such that she could not propose monthly payments beyond 1% of her debts. If her petition were converted into a Chapter 7 proceeding, she and her two children would face the undesirable consequences of possible eviction from her dwelling and repossession of her automobile. Congress intended to avoid such harsh results in bankruptcy where possible, recognizing that, were the court to "force the debtor, or his dependents, to become public charges, [it would be] to the detriment of the debtor, his dependents, his creditors and the public." *H.R. Rep.* at 124, U.S.Code Cong. & Admin.News 1978, p. 6085. Forcing appellant Barnes into Chapter 7 will provide no comfort to creditors and only exacerbate an unfortunate situation. Her plan, which offered repayment to the maximum extent she honestly believed she was capable, met Chapter 13's good faith requirement.

Whether appellant Montano's repayment plan met the good faith standing in the absence of a meaningful repayment requirement is a question the Court need not examine. For the reasons set out below, the plan's classification of unsecured debts fails in the first instance by unfairly discriminating against a group of unsecured creditors under 11 U.S.C. § 1322(b)(1).

### III.

■ A debtor's repayment plan under Chapter 13 may distinguish among groups of creditors if certain conditions are met. Section 1322 requires that:

(b) . . . the plan may

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated;

Claims classified together must be substantially similar according to the terms of section 1122(a). This requires a similarity in the legal nature of the claims. 5 *Collier on Bankruptcy* ¶ 1122.03 at 1122–4. As the bankruptcy judge properly concluded, a separate classification is not allowable merely on the basis of the presence of a co-obligor debt, because its holder has no more legal right to the debtor's assets than a general unsecured creditor. In re *Iacovoni*, 2 B.R. 256, 260–61 (Bkrtcy.D.Utah 1980). However, a further rationale suggests itself for rejecting appellant Montano's debt classification. Where the classification provides for *full* repayment to one group of unsecured creditors, but only token repayment to another class, it is difficult to conclude that fairness exists in the classification. Such a difference in treatment is too extreme to satisfy section 1322(b)(1). *Id.* at 261. Accordingly, the rejection of Montano's classification was consistent with requirements of section 1322(b)(1).

### IV.

Appellant Barnes notes in the brief that since the Bankruptcy Court's rejection of her plan, her level of income has increased.** On remand the Court should determine whether she remains unable to

---

** This is attributed principally to the resumption of child-support payments by her former husband.

meet the payments proposed in her plan in light of the changed circumstances. Alternatively, if the Court determines that she is unable to meet the plan's payments, the debtor is entitled to propose another repayment plan to meet the requirements of section 1325(a). In light of this ruling, the Court need not examine the Bankruptcy Court's decision to convert her petition into a Chapter 7 proceeding *sua sponte*. The rejection of appellant Montano's plan is affirmed. His proceeding is remanded for completion on the merits.

Accordingly, it is this 22nd day of April, 1981,

ORDERED, (1) The decision of the Bankruptcy Court 5 B.R. 376, rejecting the Debt Adjustment Plan of appellant Barnes is reversed and remanded;

(2) The decision of the Bankruptcy Court 4 B.R. 535 rejecting the Debt Adjustment Plan of appellant Montano is sustained and affirmed.