**In the Matter of Norman H. ESSER, Debtor.**

**Bankruptcy No. 81–07240–B.**

United States Bankruptcy Court, E. D. Michigan, S. D.

Aug. 24, 1982.

Kevin F. Carr, Southfield, Mich., for debtor.

A.T. Paglia, Warren, Mich., for Township Oil Co.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

This case involves two basic questions. Must a Chapter 13 debtor provide for 100% repayment of a nondischargeable debt, and is the amount proposed to be paid to unsecured creditors a factor to be considered in determining whether a plan is filed in "good faith"?

Norman H. Esser (debtor) filed for relief under Chapter 13. In his schedules, the debtor listed a judgment debt to Township Oil Company for $104,000.00.[1] This judgment issued from the Macomb County Circuit Court less than one month earlier in an action by the creditor for fraud and commercial conspiracy. The debt to Township represents approximately 88% of the debtor's total unsecured liabilities.

The debtor filed a plan which proposes to pay unsecured creditors 15% of their claims. The amount to be paid to unsecured creditors under the plan is more than unsecured creditors would realize if the debtor's estate were liquidated under Chapter 7. Township objects to the confirmation of the plan on the grounds 1) that a plan cannot be confirmed if it does not provide for 100%

payment of a nondischargeable debt; and, 2) that the plan was not proposed in "good faith" as required by 11 U.S.C. § 1325(a)(3), in that it does not provide for substantial repayment of the debtor's unsecured debt.

Section 1325(a) provides in pertinent part that the court shall confirm a plan dealing with unsecured debt if

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date; [and]

\* \* \* \* \* \*

(6) the debtor will be able to make all payments under the plan[.]

■ Initially, Township contends that the so-called "best interests" test of section 1325(a)(4) is not met because its debt would not be dischargeable under Chapter 7 and, therefore, it would receive 100% of its claim in a Chapter 7 proceeding, whereas, it will receive only 15% under the plan. This argument is not tenable. The amount that a creditor will receive in a Chapter 7 liquidation is determined by reference to the estate existing at the time of the filing of the bankruptcy petition. It does not include any amount that a creditor may recover on a nondischargeable debt out of future income of the debtor. "What is to be compared is the total of the payments to the creditor, discounted to present value, and the amount the creditor would receive in a straight liquidation." *In re Rimgale,* 669 F.2d 426, 8 B.C.D. 874, 878 (7th Cir. 1982). The amount that a creditor will receive on liquidation does not include any recovery he may make after liquidation. If Township's interpretation of section 1325(a)(4) were ac-

---

1. The total judgment awarded by the Macomb County Circuit Court is as follows: $104,857.16 actual damages; costs of $494.20; $50.00 attorney fees, plus interest accruing at a rate of 6%

from the filing of the action to the date of judgment and 12% thereafter, totalling approximately $46,000. The creditor filed proof of claim in the amount of $152,785.75.

cepted, any creditor with an alleged nondischargeable debt could prevent confirmation of a plan, unless the debtor offered a 100% payment plan. A creditor holding what would be a nondischargeable claim in a Chapter 7 proceeding "[w]ould have a virtual veto over a Chapter 13 plan, while ordinary unsecured creditors have not even a vote. The generous discharge provisions of Chapter 13 would be illusory, subject to abrogation whenever a creditor with the sort of claim they cover objected to the plan." *Id.*

■ The argument that a plan that proposes payments of only 15% to unsecured creditors is not proposed in "good faith" offers a more serious challenge to confirmation. The question as to whether the quantum of payment under a plan is an element of good faith has caused courts considerable difficulty.[2] This opinion is written not to contribute to the state of the law on this issue. As is evident from a reading of the cases and law review material cited in footnote 2, all that can be said about the subject has been said. It is written merely to provide guidance for the local bar and to add another voice to the plaint that Congress act to resolve the conflict, and to make it clear whether the amount of payment proposed under a plan is an element of "good faith" and, if so, to set forth the criteria that the court is to consider in making this determination.[3]

■ Some courts have seized upon the concept of "good faith" and have refused confirmation of Chapter 13 plans on the basis that the proposed dividend was either not "substantial", *In re Howard,* 3 B.R. 75, 1 C.B.C.2d 633 (Bkrtcy. S.D. Cal. B.J. 1980); not "meaningful", *In re Hurd,* 4 B.R. 551, 2 C.B.C.2d 190 (Bkrtcy. W.D. Mich. B.J. 1980); not "substantial" and "meaningful", *In re White,* 4 B.R. 349, 2 C.B.C.2d 224 (Bkrtcy. E.D. Va. B.J. 1980); not "equitable", *In re Manning,* 5 B.R. 387, 2 C.B.C.2d 873 (Bkrtcy. W.D.N.Y. B.J. 1980); not "fair and equitable", *In re Goeb,* 4 B.R. 735, 6 B.C.D. 628 (Bkrtcy. S.D. Cal. B.J. 1980) *rev'd* 675 F.2d 1386 (9th Cir. 1982); or that the plan did not represent the debtor's "best effort", *In re Madden,* 1 C.B.C.2d 1093 (S.D. Ohio B.J. 1980). Others have held that the quantum of payment pursuant to a plan is not an element of "good faith." *Matter of Scher,* 12 B.R. 258, 7 B.C.D. 979 (Bkrtcy. S.D.N.Y. B.J. 1981); *In re Wiggles,* 7 B.R. 373, 6 B.C.D. 1326 (Bkrtcy. N.D. Ga. B.J. 1980). There is nothing, they maintain, in "either the statutory language or the legislative history of either the Bankruptcy Act or the Bankruptcy Code, nor is there anything in the case law decided under the Bankruptcy Act to suggest that 'good faith' was intended to play any role whatever in determining the quantum of payments or dividends to be proposed by the plan." Cyr, The Chapter 13 "Good Faith" Tempest: An Analysis and Proposal for Change, 55 *Am. Bankr. L.J.* 271, 276 (1981). Any payment plan, therefore, no matter how minimal, and even zero payment plans are to be confirmed if they meet the "best interests" test of section 1325(a)(4). *In re Slade,* 15 B.R. 910, 8 B.C.D. 558 (9th Cir. Bkrtcy. App. 1981); *In re Barnes,* 7 B.C.D. 961, 13 B.R. 997 (D.D.C. 1981); *In re Cloutier,* 3 B.R. 584, 1 C.B.C.2d 909 (Bkrtcy. D. Colo. B.J. 1980).

**2.** The cases are collected in Cyr, *The Chapter 13 "Good Faith" Tempest: An Analysis and Proposal for Change,* 55 Am. Bankr. L.J. 271 (1981) and *In re Scher,* 12 B.R. 258, 7 B.C.D. 979 (Bkrtcy. S.D.N.Y. B.J. 1981). The subject has also been the subject of extensive scholarly comment. *See, also,* Note, *Good Faith, Zero Plans, and the Purposes of Bankruptcy Code Chapter 13: A Legislative Solution to the Controversy,* 61 B.U.L. Rev. 773 (1981); Note, *Chapter 13 De Minimis Plans: Toward a Consensus on "Good Faith,"* 9 Hofstra L. Rev. 593 (1981); Note, *Filing for Personal Bankruptcy: Adoption of a "Bona Fide Effort" Test Under Chapter 13,* 14 Mich. J.L. Ref. 321 (1981);

Note, *"Good Faith" and Confirmation of Chapter 13 Composition Plans: Analysis and a Proposal,* 65 Minn. L. Rev. 659 (1981); Note, *Good Faith in Chapter 13: A New Wild Card for Bankruptcy,* 8 Ohio N.U.L. Rev. 102 (1981); Note, *Bankruptcy: Good Faith and the Zero Payment Plan in Chapter 13,* 69 Ky. L.J. 327 (1981); Note, *Abusing Chapter 13 of the Bankruptcy Code: The Problem of Nonpayment,* 55 N.Y.U. L. Rev. 941 (1980).

**3.** There is legislation now pending in Congress, H.R. 4786 and S. 2000, which addresses this question.

The term "good faith" is derived from Section 651 of Chapter XIII of the Bankruptcy Act. Congress did not define the term in either the Bankruptcy Act or the Code, and the legislative history accompanying Section 651 of the Act and Section 1325(a)(3) of the Act does not cast any light on the purpose the term was intended to serve. Nor are there any reported cases construing the "good faith" requirement under Section 651 of the Bankruptcy Act. The failure to define "good faith" and the absence of any legislative history to reveal what was intended by its inclusion as an element of confirmation is unfortunate. However, the fact that pre-Code case law dealing with the requirement of "good faith" did not address the quantum of payment that is required under a plan does not establish that the quantum of payment is not an element to be considered. Under Chapter XIII, a plan to be confirmed required creditor acceptance. The threat of creditor challenge compelled debtors to propose a level of repayment acceptable to creditors. There was no need, therefore, for the issue of the quantum of payment to be raised in the context of "good faith" until the present Chapter 13 was adopted.

Chapter XIII was first enacted in 1938 to provide "wage earners" with an alternative to straight bankruptcy. The chapter was not widely used. The House Subcommittee, in considering the proposed Bankruptcy Reform Act of 1978, found that:

> [M]ost consumer debtors would rather work out a repayment plan that file straight bankruptcy. They opt for straight bankruptcy only because present chapter XIII simply cannot meet their needs. Only in certain areas of the country where the bankruptcy judges have

taken an active interest, have put in the extra effort required to make chapter XIII work, and have encouraged the bar to recommend its use, has chapter XIII provided any substantial or realistic alternative to straight bankruptcy liquidation. H.R. Rep. No. 95–595, 95th Cong. 1st Sess. 117 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6077.

To make Chapter 13 more attractive to debtors who desired to repay their obligations, Chapter XIII was materially altered. Chapter XIII was available only to individuals "whose principal income is derived from wages, salary or commissions." Section 606(8).[4] Chapter 13, in contrast, is available to any individual with regular income from whatever source.[5] Under Chapter XIII, a plan, to be confirmed, had to be accepted by a majority in amount of unsecured creditors. Section 652(1). Chapter 13 eliminates this requirement. As an additional inducement to file a Chapter 13 rather than a Chapter 7 proceeding, Chapter 13 also provides that a debtor who carries out his proposed plan is entitled to a discharge of all debts except those for alimony and support payments. Section 1328(a)(2).[6]

> The purpose of these changes was to permit almost any individual with regular income to propose and have approved a reasonable plan for debt repayment based on that individual's exact circumstances. As in current law, 100 percent payment plans will be encouraged by the limitation on availability of a subsequent discharge in section 727(a)(8). This kind of plan has provided great self-satisfaction and price to those debtors who complete them and at the same time effect a maximum return to creditors. S. Rep. No. 95–989,

**4.** Originally, a "wage earner" was defined as an individual earning wages or salary not in excess of $1,500 a year. The Act was subsequently amended to increase the amount to $3,600 per year, and finally to $5,000 per year. For a history of the development of Chapter 13 under the Bankruptcy Act, see 10 Collier on Bankruptcy ¶ 22.09 (14th Ed. 1978).

**5.** The effect of this change is to make Chapter 13 available to pensioners, social security recipients, self-employed people, professional people

(except stockbrokers and commodity brokers), proprietors of small businesses, and certain farmers. Lee, *Chapter 13 nee Chapter XIII*, 53 Am. Bankr. L.J. 303 (1979).

**6.** Actually, taxes, to the extent that they are nondischargeable in a Chapter 7 proceeding, are also nondischargeable in Chapter 13 since they must be provided for in the plan. Section 1322(a)(2).

95th Cong. 2d Sess. 13 (1978), U.S. Code Cong. & Admin. News 1978, p. 5799.

It was also intended

to prevent chapter 13 plans from turning into mere offers of composition plans under which payments would equal only the non-exempt assets of the debtor. *Id.*

 While there are no pre-Code cases that discuss "good faith" in terms of the quantum of payment required to be made under a plan, it is conceded that a plan that is in contravention of the provisions, purposes, or spirit of Chapter 13 justifies a finding that the plan was not filed in "good faith." *In re Terry,* 630 F.2d 634 (8th Cir. 1980); *In re Cloutier,* 3 B.R. 584, 1 C.B.C.2d 909 (Bkrtcy. D. Colo. B.J. 1980); *In re Harland,* 3 B.R. 597, 1 C.B.C.2d 973 (Bkrtcy. D. Neb. B.J. 1980); 10 Collier on Bankruptcy ¶ 29.06 (14th Ed. 1974). The purpose and spirit of Chapter 13 is best served by ruling that a plan that meets the "best interest" is not necessarily filed in "good faith." *In re Polak,* 9 B.R. 502 (D.C. W.D. Mich. 1981). To make a determination whether a plan is filed in "good faith",

[a] bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner. Though it may consider the substantiality of the proposed repayment, the court must make its good faith determination in light of all militating factors.

*In re Goeb,* 675 F.2d 1386, 1390 (9th Cir. 1982). Unless courts give consideration to this factor,

the danger exists that Chapter 13 plans could become shams that would emasculate the safeguards that Congress has included in Chapter 7 to prevent debtor abuse of the bankruptcy laws. The

courts retain discretion to prevent such abuse, and that discretion can be exercised effectively through a meaningful interpretation of the good faith requirement of § 1325(a)(3).

*In re Burrell,* 6 B.R. 360, 366 (D.C. N.D. Cal. 1980).

 Accordingly, a hearing will be scheduled to consider whether the proposed plan of the debtor is or is not filed in "good faith". In determining whether "good faith" exists, the court will consider the proposed percentage of repayment to unsecured creditors, the excess income available to the debtor after payment of actual and necessary expenses, the future income prospects of the debtor, the ratio of nondischargeable debt to dischargeable debt, the length of the plan, and any other relevant factors.[7]

---

**7.** Several courts have found a lack of good faith where the debtor proceeds under Chapter 13 primarily to obtain a discharge of a nondischargeable debt. *See, e.g., In re Graves,* 19 B.R. 402, 9 B.C.D. 30 (Bkrtcy. W.D. La. 1982); *In re Mitruka,* 19 B.R. 516, 9 B.C.D. 20 (Bkrtcy. E.D. Pa. B.J. 1972); *In re Murallo,* 4 B.R. 666, 6 B.C.D. 478 (Bkrtcy. D. Conn. B.J. 1980); *In re Yee,* 7 B.R. 747, 3 C.B.C.2d 388 (Bkrtcy. E.D.

N.Y. B.J. 1980). As with other aspects of the "good faith" controversy, this view is not without its dissent. *See, e.g., In re Rimgale,* 669 F.2d 426, 8 B.C.D. 874 (7th Cir. 1982); *In re Slade,* 15 B.R. 910, 8 B.C.D. 558 (9th Cir. Bkrtcy. App. 1981); *In re Blossfeld,* 13 B.R. 534, 8 B.C.D. 44 (Bkrtcy. N.D. Ill. B.J. 1981); *In re Seely,* 6 B.R. 309, 6 B.C.D. 1003 (Bkrtcy. E.D. Va. B.J. 1980).