IN THE MATTER OF William Grant
WIGGLES (10%).

IN THE MATTER OF Carolyn
Leaks LATTA (70%).

IN THE MATTER OF Larry
Uzzell ROWE (10%).

IN THE MATTER OF Larry
Vann WHITE (0%).

IN THE MATTER OF Robert P.
McELHANNON (1%).

IN THE MATTER OF George
William BALL (0%).

Bankruptcy Nos. 80–01782A, 01834A, 01773A, 01729A, 02736A and 02170A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Nov. 22, 1980.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

This opinion is for each and all of the above styled Chapter 13 cases under the Bankruptcy Code where the plan in each case in sequence provides payments (1) 10% of allowed claims to unsecured creditors, (2) 70% of allowed claims to unsecured creditors, (3) 10% of allowed claims to unsecured creditors, (4) and (6) zero % of allowed claims to unsecured creditors, and (5) 1% of allowed claims to unsecured creditors. Each plan proposes payment to the secured creditors which provides adequate protection to the extent of the value of each allowed secured claim as required under 11 U.S.C. § 1325(a)(5)(B).

A creditor in each of (1), (2), (3), (4), (5) cases has filed an objection to the confirmation of the Chapter 13 plan, arguing that the debtor has present employment with earnings which should enable debtor to make payments to the unsecured creditors more substantial than the plan proposes, and/or that if a five year plan were required instead of a three year plan, the debtor could make greater payments. In case number (4), a motion to dismiss was also filed. In case number (6) a creditor merely filed an objection to the plan; no motion to dismiss was filed.

No objecting creditor appeared at the confirmation hearing to offer evidence in support of the bare contention that the debtor's current post–petition earnings allow and require a greater payment, and to what extent, to unsecured creditors.

### Good Faith Argument

Neither has an objecting creditor pointed to any provision of Section 1325(a), or any other section, in the Bankruptcy Code which is not satisfied by the proposed plan, except to argue that the plan is not in "good faith" as required under subsection (3) of Section 1325(a). No decisional authority has been cited in any written objection to the confirmation of the plan. But the court is cognizant of several recent pub-

lished decisions of Bankruptcy Judges which hold that no plan may be confirmed which fails to propose payments to unsecured creditors rising to the status of "meaningful payments" or "meaningful effort" or the "best effort" of the debtor.[1] Some such decisions have suggested that the overall thrust and legislative intent of Chapter 13 of Title 11, U.S.C., as reflected by congressional hearings and House and Senate Reports, require payments of seventy percent[2] as a condition to confirmation of the plan.

■ The court will deal with the contention that the "good faith" requirement of subsection (3) of Section 1325(a) means "best effort" or "meaningful effort" or "meaningful payments" of the debtor to make provision in the Chapter 13 plan for payments to unsecured creditors. The term "good faith," as used in Sections 1325(a)(3) and § 1129(a)(3) as a confirmation standard, is left undefined in the Code and legislative reports. While recent decisions as to a definition have varied,[3] with some suggesting that "best efforts" or "substantial payments" are elements of good faith,[4] no decision has offered satisfactory analysis or discussion of the meaning of the term good faith under the Bankruptcy Code.[5] Yet,

this term "good faith" should be interpreted in the statutory sense rather than a lay conception of good faith which may vary from judge to judge. As the following analysis will demonstrate, the term good faith, as used by Congress in Sections 1325(a)(3) and 1129(a)(3), does not include as a part of its meaning a requirement to make a quantitative payment of any amount to unsecured creditors.

The court will first show that the good faith of Section 1325(a)(3) and Section 1129(a)(3) should not be construed to mean feasibility of the plan or accrue a meaning of quantitative payment under the plan. Then the court will apply its own reasoning to the meaning of this statutory term.

(1) *The Term Good Faith Has No Connotation Of Feasibility:*

The concept of "good faith" in the context of bankruptcy cases seems to have originated in the decision of *Shapiro v. Wilgus*, 287 U.S. 348, 357, 53 S.Ct. 142, 145, 77 L.Ed. 355 (1932), in an equity receivership case. This decision involved a question of the proper jurisdiction of the District Court where the petitioning debtor had been guilty of fraud which was "part and parcel of a scheme whereby the form of a judicial remedy ... [the petition for federal receiv-

1. *In re (James) Curtis (and Gail Curtis)*, 2 B.R. 43, 5 B.C.D. 1214, (Bkrtcy.W.D.Mo.1979), good faith means "best effort"; *In re Iacovoni*, 2 B.R. 256, 5 B.C.D. 1270 (Bkrtcy.D.Utah 1980) "good faith proposal requires something less than best effort which may be defined as good faith effort to make meaningful payment to holdes of unsecured claims"; *In re (Linda) Beaver*, 2 B.R. 337, 5 B.C.D. 1285 (Bkrtcy.S.D.Cal. 1980) good faith requires meaningful effort; *In re (Gladys) Campbell*, 3 B.R. 57, 5 B.C.D. 1365 (Bkrtcy.S.D.Cal.1980); *In re (George) Howard (and Peangkaeo Howard)*, 3 B.R. 75, 5 B.C.D. 1375 (Bkrtcy.S.D.Cal.1980).

But compare: *In re (James) Powell (and Pamela Powell)*, 2 B.R. 314, 5 B.C.D. 1233 (Bkrtcy.E.D.Va.1980), good faith does not mean "best effort; *In re (Stuart) Terry (and Shiela Terry)*, 3 B.R. 63, 5 B.C.D. 1397 (Bkrtcy.W.D. Ark.1980) plan proposing no payments to unsecured creditors is in good faith; *In re (William) Carl (and Barbara Rose Armstrong)*, 3 B.R. 615, 6 B.C.D. 259 (Bkrtcy.Or.1980) terms good faith and best effort are not equivalent; *In re (James) Eugene (and Lana Sue McMinn)*, 4 B.R. 150, 6 B.C.D. 297 (Bkrtcy.D.Kan.1980)

good faith should not be interpreted as imposing best effort payment; *In the Matter of (Earl) Harland (II)*, 3 B.R. 597, 6 B.C.D. 235 (Bkrtcy. D.Neb.1980) good faith is not related to amount of payments.

2. *In re (Paul Eugene) Burrell*, 2 B.R. 650, 5 B.C.D. 1321, 1 C.B.C. 474 (Bkrtcy.N.D.Cal. 1980); *In re (Coy & Ruth) Raburn*, 4 B.R. 624, 6 B.C.D. 453 (Bkrtcy.M.D.Ga.1980).

3. Cf. fn. 1.

4. *Burrell*, on appeal to the District Court, 6 B.R. 360, 6 B.C.D. 900 (Bkrtcy.D.C., N.D.Cal.1980).

5. The Eighth Circuit Court of Appeals recently on September 22, 1980, in the case of *(Stuart R. & Shiela M.) Terry*, U.S.B.C., W.D.Ark., No. 80–12140 (3 B.R. 63, 5 B.C.D. 1397), on appeal 630 F.2d 634, 6 B.C.D. 974, held that a Chapter 13 plan proposing to pay nothing to unsecured creditors is not proposed in good faith under Section 1325(a)(3), and the Bankruptcy Court erred in confirming the zero payment plan, p. 3, fn. 3.

ership] . . . was to supply a protective cover for a fraudulent design." (p. 355, 53 S.Ct. p. 144) The act of transferring title to the business to a corporation which was "not legitimately conceived for a normal business purpose . . . or designed to function according to normal business methods," but which possessed a consequent "capacity for obstruction . . . [i. e. of creditors] . . . greater than his own," was not "fair and lawful," and was absent the "exemplary motives and scrupulous *good faith*" which is necessary to the exercise of equitable jurisdiction. (p. 356–57, 53 S.Ct. p. 144–45) [Emphasis supplied]

The Court ruled that it was "a misconception of the privileges and liberties vouchsafed to an embarrassed debtor" to make a conveyance to "defraud the creditors of the grantor," and "equally it is illegal if made with an intent to hinder and delay them." (p. 354, 53 S.Ct. p. 144)

Thus, a debtor is cloaked with no privilege under the laws of equity, which guide all bankruptcy proceedings, to unwarrantedly "build up obstructions that will hold his creditors at bay" (p. 354, 53 S.Ct. p. 144) and to gain the interposition of a restraining order of the court between the debtor "and the creditors pursuing him" (p. 355, 53 S.Ct. p. 144) for no legitimate, normal and reasonable bankruptcy reorganization purpose. In this manner the concept of "good faith" of the purpose of the filing of the debtor's petition was introduced into federal insolvency proceedings.

Subsequently, the term "good faith" was used in the Corporation Reorganization Act of 1934, also in reference to the *filing* of the *petition*. See Section 77B Corporate Reorganization (a) of the Bankruptcy Act. 48 Stat. 911. See also H.Rep.1679, 74 Cong., 1st Sess., July 30, 1935, p. 2, (re H.R.8940). Previously, H.Rep.5884, 73d Cong., 2d Sess., March 15, 1934, 194, Senate Calendar No.

510, Rep.No.482, p. 4 (re H.R.5884) had recommended that "good faith" be required to be found by the judge upon the filing of the petition for reorganization of a corporation under proposed Section 79 of the Bankruptcy Act. The cited congressional reports gave no indication as to the intended meaning of good faith of the debtor in the filing of the petition in the court of bankruptcy.

Chapter X, enacted by the Chandler Act into the Bankruptcy Act of 1898, required in §§ 141, 144 and § 146, a finding by the judge that the petition was filed by the debtor in good faith. The subsequent court decisions [6] ascribed a meaning of initial feasibility, that is, a threshold, prima facie finding by the court of some prospects for successful rehabilitation. This was a reasonable and proper interpretation of good faith as used in § 141; it required dismissal of the petition if there was no chance of reorganization. That is, where rehabilitation was shown to be impossible, the petition was a fraud or an improper delay and imposition upon the creditors and an improper exercise of the jurisdiction of the court.

However, the term "good faith" was also included by the drafters of the Chandler Act as a condition to confirmation of the plan in Chapter X, Chapter XI, Chapter XII, and Chapter XIII.[7] The court of bankruptcy was required to find that the plan was proposed in good faith and not by any means contrary to provisions of the Bankruptcy Act. Although the judicial decisions regarding the "good faith" requirement of the proposal of the plan are meager,[8] the courts seem to have continued to construe "good faith" of proposal of the plan with the connotation of feasibility. This seems improper because feasibility was a specific statutory confirmation test of the confirmation sections of Chapters X, XI, XII and XIII.[9] Thus, although the term "good

---

6. *In re Tennessee Pub. Co.*, 81 F.2d 463, 466 (6th Cir. 1936) [§ 77B case]; *In re Sterba*, 74 F.2d 413, 417 (7th Cir. 1935) [§ 74 case]; *In re Dutch Woodcraft Shops*, 14 F.Supp. 467 (W.D. Mich.1935) [§ 77B case].

7. Bankruptcy Act, Section 221(3), Chapter X; Section 366(4), Chapter XI; Section 472(4) Chapter XII; Section 656(4) Chapter XIII.

8. See fn. 6, supra.

9. Fn. 7, *supra*.

faith" was used by Congress in Chapter X in a different sense in § 141 than in § 221(3), the court decisions were less than precise, if not confusing, in enunciating a distinction.[10]

The historical judicial derivation of the term connotes a meaning stricter than the mere absence of fraudulent, dishonest or malevolent conduct of the debtor in making the proposal.[11] The decisions indicate that the term is not equated to and does not rise to the level of venality, dishonesty or evil acts. That is, conduct something less than venality or dishonesty may support a finding of absence of good faith. Recently, in an opinion in a Chapter XII case,[12] this court observed that:

Good faith [re proposal of the plan] seems not to be a condition which is the sum total of a series of positive actions. More likely, good faith seems to be a condition to be proved, in part at least, by an accumulation of some relevant negatives, i. e.: the absence of some actions the existence of which each, individually, would demonstrate [lack of good] faith in the proposal or acceptance of a plan. Good faith, in the statutory context of Section 472(3), is the absence of deceit and devious conduct, the absence of duress or unreasonable act, the absence of a design to secure an unconscionable advantage of another party in the confirmation proceeding; it is honesty in fact, the full disclosure of all relevant facts, the full explanation of questioned actions; it

is to propose and obtain acceptance of the plan in compliance and consistent with the purposes, objectives and spirit of the Chapter XII statute which is to foster the rehabilitation of a qualified distressed debtor. (p. 28)

█ Now, under the Bankruptcy Code, subparagraph (6) of subsection 1325(a) provides a feasibility standard of confirmation by requiring a finding that the debtor will be able to make the payments and consummate the plan. Thus, it would be error to ascribe to the good faith standard of subsection (3) of Section 1325(a) a meaning of feasibility or financial ability of debtor to make the payments proposed in the plan.

(2) *Good Faith Does Not Have a Quantitative Meaning:*

Subparagraph (4) of Section 1325(a) provides that the value, as of the effective date of the plan, of property to be distributed under the plan on each unsecured claim, must not be "less than the amount that would be paid on the claim in a liquidation case under Chapter 7."[13] This is an economic or fiscal test requiring equality with liquidation as was the best interest of creditors test under Section 656(a)(2) of Chapter XIII of the prior Act. While Congress obviously could have required "more than" and/or "best effort," et al., instead of "not less than," pointedly it did not do so in the Bankruptcy Reform Act of 1978.

(3) *Good Faith Does Not Include a Meaning of Best Effort:*

---

**10.** While it would be more orderly and perhaps better to have a uniform understanding of the meaning of "good faith" wherever used in the Code, there is no certainty that "good faith" as used in § 727(a)(9) was intended to or will be construed by the courts to have the same meaning as "good faith" as used in § 1325(a)(3) and § 1129(a)(3). As observed earlier, even within Chapter X of the Bankruptcy Act, the term "good faith" of the filing of the petition under Section 141 and Section 146 was used in a different sense than the term was used as a confirmation standard in § 221(3). The decisions construed *good faith of filing* (§ 141 and § 146) to mean that the debtor had a reasonable chance for rehabilitation [*In re Plaza Towers, Inc.*, 294 F.Supp. 714 (D.C.La.1967)], *In re Metropolitan Realty Corporation*, 433 F.2d 676 (C.A. 5, 1970), i. e., an element of feasibility;

while the *"good faith"* of proposal *of the plan* could not have included an element of feasibility because feasibility was a separately stated test, i. e.: [§ 221(1), § 366(2), § 472(2), § 656(2)], from the tests of good faith and no illegality, to wit: § 221(3), § 361, § 366(4), § 467, § 472(4), § 651, § 656(4) of the Bankruptcy Act.

**11.** *Shapiro v. Wilgus*, 287 U.S. 348, p. 357, 53 S.Ct. 142, p. 145, 77 L.Ed. 355.

**12.** *Perimeter Park Investments Associates, Ltd.*, 1 B.R. 473, —— B.C.D. ——, —— C.B.C. —— (N.D.Ga. 1980).

**13.** 11 U.S.C. § 1325(a)(4).

■ It can readily be recognized that subparagraph (3) and subparagraph (4) of Section 1325(a) describe confirmation standards of a different nature, class and character. Subparagraph (4) determines the extent of economic payment which the debtor's plan must provide to the creditors; i. e., no less than they would receive in Chapter 7. While the Code and legislative reports indicate a congressional expectation that the Chapter 13 debtor plan will provide for payment of the value of the collateral to each secured claimant and for some payment to unsecured claimants, and that Chapter 13 will provide encouragement to the debtors to file extension or composition plans for the payment of debts rather than Chapter 7 liquidations, nevertheless, Section 1325(a)(4) is the only statutory requirement dealing with the quantitative extent of payment to creditors incident to confirmation of a plan. Any attempt to read into the term "good faith" other quantitative payment standards similar to "meaningful payment", "substantial payment" or "best effort" to unsecured creditors is not warranted by the Bankruptcy Code.[14]

The term "best effort" is used in Section 727(a)(9), where the Code provides for a discharge to a Chapter 7 debtor before the end of six years from the filing of the Chapter 7 petition (1) if the debtor paid 100% of the unsecured claims or (2) if the debtor paid at least 70% of the unsecured claims, and "the plan was proposed by the debtor in good faith, and was the debtor's *best effort*; . . ." [emphasis supplied] The argument has been advanced that this provision of Section 729(a)(9), and the existence of a statutory philosophy in Chapter 13 which offers encouragement to debtors to pay as much unsecured debt as possible, requires a reading of "best effort" into the confirmation standards.[15] Yet, a reading of Section 727(a)(9) makes clear to this court that the terms good faith and best effort are not equivalents or inclusive for *both* good faith and best effort are listed as requirements for the discharge.[16] If the terms good faith and best effort had parallel or inclusive meanings there would have been no reason to include both in Section 727(a)(9) and omit "best effort" in Section 1325(a)(3). It is clear that Congress, having put "best effort" into the Code in Section 727 as a discharge standard well knew the term "best effort," and how to use it, and just as conveniently could have included it as one of the Chapter 13 confirmation standards.[17] The fact that it was not so included, and was not mentioned by the House or Senate Reports or other legislative statements, reflects a deliberate congressional purpose not to have confirmation of Chapter 13 plans judged by such quantitative standard of payment. It seems not unreasonable to suppose that Congress may have concluded that the Section 727(a)(9) standard for obtaining a Chapter 7 discharge, in event of failure to consummate a Chapter 13 plan, imposes an effective encouragement upon a Chapter 13 debtor to propose and consummate a plan with best effort payments—without enacting this Chapter 7 discharge standard into the Section 1325(a) standards for confirmation of Chapter 13 plans. Congress also may have concluded that introducing such a best effort requirement into Section 1325(a) as a standard for confirmation would take away the flexibility now available in Chapter 13 and would

14. *Id.*

15. Cf. *In re (Paul Eugene) Burrell*, 2 B.R. 650, 5 B.C.D. 1321, 1 C.B.C. 414 (Bkrtcy.N.D.Cal. 1980), substantial payment and best effort must be read into statute and means 70% of minimum payment to allowed unsecured claims; cf. (Bkrtcy.D.C., N.D.Cal.) 6 B.R. 360, 6 B.C.D. 900; *In re (Coy & Ruth) Raburn*, 4 B.R. 624, 6 B.C.D. 453 (Bkrtcy.M.D.Ga.1980).

16. 11 U.S.C. § 727(a)(9).

17. Justice Frankfurter, Some Reflections on the Reading of Statutes, 47 Col.L.Rev. 527, 536 (1947): "[one] must also listen attentively to what it [the statute] does not say." (matter in brackets added.) *NLRB v. Kevin Steel Products, Inc.*, 519 F.2d 698, 702, 704–5 (2nd Cir. 1975); *In re Delta Food Processing*, 446 F.2d 437, 439 (5th Cir. 1971); *United States v. Embassy Restaurant*, 359 U.S. 29, 32, 79 S.Ct. 554, 556, 3 L.Ed.2d 601 (1959).

conflict with the completely voluntary objective of Chapter 13.[18]

(4) *The Meaning of Good Faith:*

Having considered what the term good faith as used in Sections 1325(a)(3) and 1129(a)(3) does not mean, the court can move to a consideration of what the term there used does mean.

■ First, the court is required to confirm a plan if the court finds at the confirmation hearing that the plan satisfies each and all of the standards contained in the six subparagraphs of Section 1325(a), 11 U.S.C.[19] Each of the six subparagraphs describe standards of a different nature, class, and character from the other five; and in some instances, a subparagraph describes more than one condition of the general nature, class, and character of the other conditions described in that subparagraph, but such conjunctive conditions within the same subparagraph may vary slightly in degree of meaning within that class. Thus, a conjunctive provision contained in any one of the six subparagraphs is to be read in *para materia* with any other condition within that subparagraph; i. e.: as possessing a meaning of the same general nature, class and character.

For instance, under subparagraph (1) of Section 1325(a), the plan must comply with all of the provisions of Chapter 13 and any other applicable provisions of the Code. It must meet the requirements of Section 1322(a) and not extend beyond the five year maximum term permitted by Section 1322(c). These are requirements of the same character.

And, under subparagraph (2), the debtor must pay all charges, etc., a standard of confirmation of a class different in character from subparagraph (1) and (3) and each of the other numbered subparagraphs.

Subparagraph (3) requires the court to find that the plan has been proposed in "good faith and not by any means forbidden by law." These are two requirements of the same character, but different in nature from the standards of the other numbered subparagraphs.

(a) *Good Faith vis–a–vis Forbidden by Law:*

Any effort to define "good faith" in the context of Chapter 13 and Chapter 11 must begin with an understanding of the other condition in subsection (a)(3) of Section 1325 that a plan may not be confirmed if proposed by "any means forbidden by law." The term "any means forbidden by law" is not defined, either by the Code or by any known decision. However, perhaps it is less elusive and debatable as to meaning than is "good faith." It seems likely that the term "forbidden by law" means that the proposal of the plan shall not violate any criminal or civil law, including fraud. Because subparagraph (1) of Section 1325(a) requires that the plan must comply with the other applicable provisions of the Bankruptcy Code, the term "law"[20] in subparagraph (3) must refer to any federal or state law, other than the Bankruptcy Code.

The terms "forbidden by law" and "good faith" are not of a different nature, class and character of meanings from each other, because if they were, they would have been in separate numbered subparagraphs of Section 1325(a). Yet, the fact that Congress saw the need to include both terms in (a)(3) signifies that the two terms are not synonymous. Good faith has a similar and closely connected, but broader, meaning than acts forbidden by law; unlawful acts are included within the broader scope of

---

**18.** The Bankruptcy Commission and Congress rejected the idea of involuntary commencement or conversion of Chapter 13 cases in lieu of voluntary Chapter 7 cases, or any requirement to pay creditors mandatory amounts from future earnings where the debtor's earnings might allow greater payment to creditors than proposed by the debtor. H.R. Report 95–595, 95th Cong., 1st Sess., 120, 121; 321, 322, 1977, U.S.Code Cong. & Admin.News 1978, p. 5787.

**19.** H.R. Report 95–595, 95th Cong., 1st Sess. § 1325, p. 430.

**20.** 11 U.S.C. § 1325(a)(3). Similar provisions of prior act (See fn. 7, *supra*) required compliance of a plan with all provisions of the "Act."

actions which are not done in good faith. The good faith test of subparagraph (3) demonstrates the absence of deceit and wrongful intention toward debtor's creditors and reflects compliance with equity and moral standards rather than statutory law.

Two elements [21] seem inherent in "good faith" with respect to the debtor's responsibility in proposing a plan, to wit: (1) honesty in purpose, and (2) full disclosure of relevant facts.[22]

(b) *Elements of good faith* :

In the context of a Chapter 13 case, these two elements apply as follows:

(i) *Honesty of purpose.* Is the debtor attempting to use the bankruptcy law as part of a scheme to supply a judicial "cover for a fraudulent design"?[23] If so, the plan is not proposed in good faith. And, it would not be necessary that the debtor's purpose be fraudulent or with intent to commit a fraud or in violation of any statutory law if the debtor's scheme could be likened to an unconscionable or deceptive act; e. g.: such as duress, used to avoid a law or contract; and

(ii) *Full and Complete Disclosure.* Full and complete disclosure of the material facts is always important to permit creditors, trustees and the court to make decisions and judgments and possibly to discover improper acts or purposes in any bankruptcy case. Particularly is this so with respect to a Chapter 13 case where the creditors do not have a vote on the plan and where the court alone must make the requisite findings under Section 1325(a) without any direct inquiry and inspection of the debtor's books and records and earnings except as voluntarily disclosed.[24] In the Chapter 13 context of confirmation of the plan by the court in accordance with the standards enumerated in Section 1325(a), the facts to be disclosed are the debtor's finances, i. e.: *assets, liabilities and income.*

Moreover, complete disclosure of such information is absolutely necessary to the determination by the court of another confirmation standard, required by subparagraph (a)(4), to wit: that the amount to be paid under the plan to unsecured creditors shall not be less than the amount that would be paid to such claimants if the debtor were liquidated under Chapter 7. Without full and honest disclosure of the debtor's financial condition, the required quantitative finding under (a)(4) could not be made.

■ Thus good faith as used in Section 1325(a)(3) means full and complete disclosure and honesty of purpose by the debtor to consummate the payments proposed in the plan.

(5) *Chapters 11 and 13 require a consistent meaning of good faith:*

■ It has been noted hereinbefore that Section 1129(a)(3) of Chapter 11 requires the identical good faith finding as a condition to confirmation insofar as the proposal of the debtor's plan is concerned. A good faith *proposal* of a creditor's plan in Chapter 11 might involve a slightly different meaning than herein discussed. The per-

---

**21.** (a) A general definition of the term good faith can be found in Black's Law dictionary:
"Good faith ... encompasses, among other things, honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage ... An honest intention to abstain from taking any unconscientious advantage of another, even through technicalities of law, together with an absence of all information, notice or benefit or belief of facts which render transaction unconscientious." Fifth Edition, p. 623.
(b) In the Uniform Commercial Code, "good faith" is generally taken to mean "honesty in fact in the conduct or transaction concerned." § 1–201(19). In a situation involving a transaction with a merchant, "good faith" means "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." § 2–103(1)(b).

**22.** *In re (Florence) Seman*, 4 B.R. 568, 6 B.C.D. 626 (Bkrtcy.S.D.N.Y.1980) (Schwartzberg, B.J.).

**23.** *Shapiro v. Wilgus*, 287 U.S. 348, 355, 53 S.Ct. 142, 144, 77 L.Ed. 355 (1932).

**24.** This is to contrast to Chapter 11 where the creditors have a vote and the right to inspect the books and records of the debtor in addition to reviewing the petition and schedules. 11 U.S.C. § 1129(a)(8)(A), (10).

spective is different. But as to the debtor's proposed plan, the term must have the same meaning in both Chapters 11 and 13. The overview and vote of the creditors in Chapter 11, as contrasted with Chapter 13, supplies both the assurance that the plan is a fair effort of the debtor to pay unsecured creditors and another reason that the concept of a quantitative best effort, et al., is not included in the meaning of good faith in Sections 1325(a)(3) and 1129(a)(3).

(6) *Technical Amendments Bill*: Finally, Congress itself, realizes that "best effort" payments to unsecured creditors is not a confirmation standard of the Code as enacted in the Bankruptcy Reform Act, November 6, 1978, because the Senate version of the proposed Technical Amendments Act would add just such a provision to the Chapter 13 confirmation standards of Section 1325(a).[25] Unless such legislation is enacted as an amendment to Section 1325(a),[26] there can be no justification, whatever may be this court's attitude toward possible inadequate proposed payments to unsecured claimants as compared to the current financial ability of the debtor which actually may allow for larger payments to unsecured creditors, for reading such a quantitative best effort requirement into the subparagraph (3) "good faith" confirmation standard, or by judicially enacting it as a confirmation standard.

*Ruling, Some Payments Plans*:

■ Each of the debtors' plans in cases (1), (10%); (2), (70%); (3), (10%) provide for *some* regular "payments" to unsecured creditors as well as payments to secured

---

**25.** S.658, 96th Cong., 1st Sess. § 188 dated September 11, 1979, (passed September 11, 1979; See Senate Congr. Rec. Sept. 11, 1979) would amend the confirmation standard of § 1325(a)(3) to add "is the debtor's best effort." "This amendment makes a change to § 1325(a)(3) so that it is clear that the court should determine that the payments in the plan proposed by the debtor are the greatest that the debtor can reasonably pay so that the liberal provisions allowing composition plans in Chapter 13 will not be abused by debtors. It conforms to the standard of § 727(a)(9) relating to the bar to discharge." Senate Rep.No.96–305, Calendar No. 325, 96th Cong., 1st Sess. (Aug. 3, 1979).

**26.** At this writing, it appears likely that Congress will soon enact a provision in the Technical Amendments Act which will require the debtor's plan to provide, as a condition to confirmation, some strong effort and means to make payments to unsecured classes of creditors. As stated in fn. 25, *supra*, the Senate version (S.658, Section 188, p. 52) added a third conjunctive provision in subparagraph (3) of § 1325(a) requiring "the debtor's best effort." There is a seemingly valid concern in some quarters that a "best" standard of effort may conflict with the voluntary nature of Chapter 13 and perhaps impose an undue hardship upon the debtor inconsistent with the long-standing congressional philosophy for voluntary wage–earner plans (See fn. 18, *supra*). If there must be a quantitative payment standard imposed upon the debtor beyond the "not less than" standard in comparison to a Chapter 7 liquidation case as required in subparagraph (4) of Section 1325(a), perhaps it should be something less exacting upon the debtor than the best, greatest, ultimate, maximum. Terms such as "substantial," "reasonable," "good," "bona fide," have occurred to some Chapter 13 observers as a more legislative consistent quantitative standard.

At this writing the court has learned that the House Judiciary Subcommittee has rejected the term "best effort" and inserted in its bill, H.R. 5447, Section 128(b), to be considered by the House very soon, the term "the debtor's good faith effort" in lieu thereof in Section 1325(a), subparagraph (3). While this term has the advantage of avoiding the requirement that plans require undue hardship or approach undue hardship, the term "good faith" effort offers some decidedly confusing aspects. The court has not seen any proposed House Report as to how this prospective confusion may be avoided. To this observer, this mixing of the term "good faith effort" with the term "good faith" already occurring in § 1325(a) in subparagraph (3) is unfortunate and offers the probability of confusion of statutory constructions as the courts did with "good faith" in Sections 141 and 221(3) in Chapter X (See fn. 6 and 10 *supra*).

But, even more confusing perhaps, is the inclusion of either term i. e.: "best efforts" or "good faith effort", *in subparagraph* (3) rather than subparagraph (4). Hopefully, before enactment Congress will recognize the point heretofore advanced herein at Section 4, p. 10 ff. as to the difference in character of the provisions of subparagraphs (3) and (4) of Section 1325(a) and will insert any such quantitative payment standard which may be settled upon by Congress into subparagraph (4) rather than in subparagraph (3).

creditors, as contemplated by Sections 101(24) and 109(e), 11 U.S.C., satisfies each and all of the requirements of Section 1325(a) and, therefore, each plan must be confirmed.

(7) *Dismissal of Cases*:

■ This is not to say that a court should not dismiss a Chapter 13 case on what may amount to jurisdictional grounds where a claimant, in support of a motion to dismiss, shows that the debtor fails to propose "payments" as implicitly required by Sections 101(24)[27] and 109(e),[28] and is not a debtor who is eligible to maintain a Chapter 13 case,[29] and the petition has no demonstrated worthwhile Chapter 13 rehabilitative purpose[30] and is so contrary to the purposes and objectives of Chapter 13 that it is nothing more than a Chapter 7 case in disguise.[31] In such a case, while the proposal of the Chapter 13 plan and the plan itself might comport to all of the statutory confirmation standards of Section 1325(a), the petition itself may not be allowed to proceed as against a motion to dismiss because of ineligibility of the debtor for Chapter 13 relief arising from incompatibility with the purposes and objectives of Chapter 13. It (i. e.: zero payments or minimal payments)

is simply not a matter of good faith of the proposal of the plan as contemplated by Section 1325(a)(3); or a matter of confirmation of the plan at all; it is a matter of the eligibility of the debtor for Chapter 13 relief. In such a case, although the court may have jurisdiction over the debtor under Title 11 U.S.C., the debtor has filed a case under the wrong chapter, and the case must be dismissed after a motion and hearing. 11 U.S.C. 1307(c).

Bankruptcy Judge Schwartzberg has pointed out,[32] in decisions that seem best to have hit the mark, that the Bankruptcy Code Section 1307(c) provides that a Chapter 13 case may be dismissed by the court *for cause* (1) on request of a party of interest, (2) and after notice and hearing, (3) whenever "in the best interests of creditors and the estate."[33]

■ Thus, where the debtor's plan proposes no payments to unsecured creditors and has no funds excess above living expenses to "make payments"[34] *and* fails to demonstrate any worthwhile Chapter 13 rehabilitative purpose to contrast with Chapter 7,[35] the case is "a disguised liquidation,"[36] contravenes the legislative purpose of Chapter 13[37] and cause exists for the

**27.** Section 101. (24) "individual with regular income" means individual whose income is sufficiently stable and regular to enable such individual *to make payments* under a plan under Chapter 13 of this title, other than a stock broker or a commodity broker. [Emphasis supplied]

**28.** Section 109. (e) Only an individual with regular income that owes, on the date of the filing of the petition, etc. may be a debtor under Chapter 13 of this title.

**29.** *(Stuart & Shiela) Terry*, (8th Cir.) *supra*, fn. 5.

**30.** *In re Roy*, —— B.C.D. ——, 2 C.B.C. 985, 5 B.R. 611 (B.C., M.D.Ala., 1980), (B.J. Hopper).

**31.** Cf. *In re (Florence) Seman*, 4 B.R. 568, 6 B.C.D. 626 (Bkrtcy.S.D.N.Y.1980) (B.J. Schwartzberg); *In re (Philip Albert) DeSimone*, 6 B.R. 89, 6 B.C.D. 861 (Bkrtcy.S.D.N.Y.1980) (B.J. Schwartzberg), where the court held that a zero plan should be denied for "cause" and the petition dismissed under Bankruptcy Code

Section 1307(c) rather than to deny confirmation under a provision of Section 1325(a).

**32.** *In re (Florence) Seman*, 4 B.R. 568, 6 B.C.D. 626, 2 C.B.C. 394, C.C.H.Bankr.Law Rep., ' 67,455 (Bkrtcy.S.D.N.Y.1980); *In re DeSimone*, 6 B.C.D. 862.

**33.** "(c) Except as provided in subsection (e) of this section, on request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under Chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate *for cause* ..." [Emphasis supplied] 11 U.S.C. § 1307(c).

**34.** *Supra*, fn. 29.

**35.** *In re Roy, supra*, fn. 30.

**36.** *In re DeSimone, supra*, fn. 32.

**37.** *Supra*, fns. 27, 28, 29, 32.

case, upon a proper motion and hearing,[38] to be dismissed by the court.

*Ruling, No Payments Plans; Motion filed:*

The petition of captioned debtor (4) (*In re White*), which proposes no "payments" to unsecured claimants, has shown no Chapter 13 rehabilitative purpose, is not in the best interests of the creditors or the estate, is a Chapter 7 case in masquerade, is ineligible for relief under Chapter 13, and, therefore, the motion to dismiss must be allowed.

*Ruling, Minimal Payments Plan :*

The plan in case number (5) (*In re McElhannon*), which proposes 1% to unsecured claimants cannot be denied or the case dismissed based on the objection or contention, without more, that such inadequate payments as proposed lack "good faith" and/or are the equivalent of no payments.[39]

The plan on its face provides *some* "payments" to both secured and unsecured creditors as required by Sections 101(24) and 109(e) which, technically at least, qualifies a debtor for Chapter 13 relief, and the plan complies with all provisions of Section 1325(a). It is undisputed that the payment proposal is more than the unsecured creditor would receive under a Chapter 7 liquidation case. 11 U.S.C. 1325(a)(4).

In the absence of evidence, this court is unable to conclude, as a matter of law, that such a 1% minimal payment proposal unsecured creditors lacks the "good faith" of § 1325(a)(3) (See good faith as hereinbefore discussed, p. 8–16), or amounts to no "payments" under Section 101(24) and demon-

strates the absence of the "regular income" test as required by Section 109(e), and is without any worthwhile Chapter 13 rehabilitative purpose.

But, where the objection to confirmation or motion to dismiss in opposition to such a minimum payment plan challenges the honesty of purpose of a minimum payment plan and the full disclosure of the debtor (See Section 1325(a)(3) good faith as hereinbefore discussed, p. 8–16) to comply with Section 101(24) and 109(e), and puts into question whether the proposed plan and case is without any worthwhile Chapter 13 rehabilitative purpose [40] and a Chapter 7 case in disguise, some *cause* may be shown which would allow dismissal,[41] and, evidence [42] may be required of the debtor to demonstrate that the debtor qualifies for to Chapter 13 relief. Here it is not clear what the facts are. The debtor filed no response to the objection. Neither the debtor nor the objecting creditor appeared at the confirmation hearing.

Hence, the debtor and objecting creditor are directed to appear at a continued hearing and present such evidence as may be appropriate on the bona fides of the petition and plan, and any other questions presented by the creditor's objection.

*Ruling, No Payments Plan; No Motion Filed :*

In case number (6) (*In re Ball*), which proposes zero payments to unsecured claimants, the objection that the plan is not in good faith as required by Section 1325(a)(3) is denied for the reasons stated herein at pages 8–16, and the plan must be con-

---

**38.** The "request" of a party in interest [11 U.S.C. 1307(c)] should be in the form of a motion to dismiss or at least an objection to confirmation (which, perhaps, a court may consider as a motion to dismiss) filed preferably prior to the conclusion of the Section 341 hearing, but, provided adequate notice and hearing is given to the debtor and the trustee, certainly no later than the conclusion of the hearing on confirmation, and such objections/motions shall be heard at the confirmation hearing. See Bankruptcy Rules 901(9), 914, 13–213(a). The court may not sua sponte dismiss the case. See fn. 32, *supra*.

**39.** Even if a quantitative payment standard were to be required by subsequent congressional amendment to Section 1325(a), the penurious widow's mite, however small it may seem, may well be greater than the abundance of others (Holy Bible, St. Mark 12:41–44, St. Luke 21:1–4), and a Chapter 13 rehabilitative purpose might be demonstrated.

**40.** *Supra*, fn. 30.

**41.** *Supra*, fn. 38.

**42.** Bankruptcy Rule 13–213.

firmed, because it complies with all six provisions of § 1325(a). Because no creditor has moved to dismiss the case, no cause is urged that the debtor does not qualify for Chapter 13 relief and the case may not be dismissed.[43]