**In re Bartlett Edward GRAVES d/b/a Graves Consulting Services and Anita Gay Lancaster Graves.**

**Bankruptcy No. 481–00389–LO.**

United States Bankruptcy Court,
W. D. Louisiana,
Lafayette—Opelousas Division.

April 13, 1982.

Charles N. Malone of Baton Rouge, La., for ADR.

Lawrence R. Anderson, Jr. of Baton Rouge, La., for debtors.

Jack Roberts, Baton Rouge, La., for R. S. Properties, Inc.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

Hearing was held on the confirmation of the debtors' Chapter 13 plan on November 23, 1981. The confirmation was opposed by ADR (A Division of National Life of Florida Corporation).

### Statement of the Facts

On August 7, 1981, the debtors herein, Bartlett Edward Graves and Anita Gay Lancaster Graves, filed for relief under Chapter 13 of the Bankruptcy Code. The two secured creditors listed in the schedules are both involved in this controversy. ADR (A Division of National Life of Florida Corporation) holds a validly recorded State court judgment in the approximate amount of $108,000.00. Louisiana law provides that a validly recorded judgment gives rise to a judicial lien over all the debtors' immovable property in the Parish in which the judgment is recorded, dating from the date the judgment is filed for recordation in such Parish. The only immovable property the debtors own in that Parish is their residence on Lancelot Drive in Baton Rouge. The debtors' residence was encumbered with a mortgage in favor of Union Federal Savings and Loan. Thus ADR's judicial lien was second in priority to Union Federal's mortgage.

The facts in the State court proceeding, in which ADR obtained a judgment against the debtors, bear some relevance to this case. Mr. Graves was the district manager of ADR and its only sales representative in Louisiana. Mr. Graves' position required him to visit the customers of ADR, maintain a rapport with them, assist them with claims or questions, and receive payments from them, as well as to seek new custom-

ers. The customers were automobile dealerships for which ADR, through Mr. Graves, provided health and accident insurance services. The State court "Reasons for Judgment" states that Mr. Graves left his position with ADR and immediately began doing business as Dealer Consultants, Inc., in direct competition with his former employer. It further states that Mr. Graves took the business of 37 of the 38 customers of ADR with which he had dealt as a representative of ADR. The court found that ADR's loss of business resulted from Mr. Graves' solicitation of ADR's customers while he was still an employee of ADR and that such conduct of Mr. Graves was a breach of his duty to ADR. The Court determined that Dealer Consultants, Inc. was the alter ego of Mr. Graves and found Mr. Graves solidarily liable with Dealer Consultants, Inc.

On March 23, 1981, the debtors withdrew over $10,000.00 from their savings account and paid all of their creditors, except ADR and Union Federal. It is also interesting to note that Mr. Graves ceased doing business as Dealer Consultants, Inc., in about April of 1981 and is now using the name of Graves Consulting Services.

In early 1981, Mr. Rankin Sherman, Mr. Graves' brother-in-law, formed R. S. Properties, Inc. This corporation purchased from Union Federal the promissory note on the debtors' residence, which was then in default. There is some indication from testimony at the trial that the debtors had intentionally defaulted on the note. The assignment of the note to R. S. Properties, Inc. occurred on July 28, 1981. R. S. Properties, Inc. began foreclosure proceedings on the note on August 6, 1981. This Chapter 13 case was filed the next day. The amount due on the note is $68,713.80. The debtors have listed the debt on their schedules as $75,584.63, the increase being due to attorney's fees for the collection of the debt.

The debtors' plan proposes to convey their residence to R. S. Properties, Inc. in full cancellation of the debt. The value of

the home is listed by the debtors as $105,-000.00. However, an appraiser who appeared at the hearing valued the property at either $116,794.00 under the cost approach or $112,000.00 under the market approach.

*Arguments of the Parties on the Issue of Dischargeability*

ADR, the objecting creditor, contends that the debt owed to it is one that would be nondischargeable either under the provisions of Bankruptcy Code section 523(a)(4) as a debt for defalcation while acting in a fiduciary capacity or under the provisions of Bankruptcy Code section 523(a)(2) as a debt for obtaining property by false representation or fraud. The creditor then contends, as this debt is nondischargeable, the debtors' Chapter 13 plan does not conform to the requirements of section 1325(a)(4) in that the property distributed under the plan is less than would be paid on such a debt if the estate of the debtors was liquidated under Chapter 7.

Further, ADR alleges that the plan has not been proposed in good faith as required by section 1325(a)(3). The lack of good faith is allegedly evidenced by: (1) the debtors' attempting to receive a Chapter 7 type of discharge of a debt that would be nondischargeable under that Chapter by using the more liberal discharge provisions of Chapter 13; (2) the debtors' intentionally defaulting on the note held by Union Federal, the later purchase of that note by R. S. Properties, Inc., a corporation owned by the debtors' brother-in-law, and the debtors' proposing in their Chapter 13 plan to convey the property to R. S. Properties, Inc. in full satisfaction of that debt, all in an attempt to put the debtors' property beyond the reach of ADR; (3) the debtors' substantially understating their income and overstating their budget in order to make only token payments into their Chapter 13 plan; and (4) the debtors' having paid all of their other creditors before filing their petition under Chapter 13.

The debtors allege: (1) that their plan complies with the confirmation standards of section 1325(a) and that this Court must, therefore, confirm the plan; (2) that ADR has failed to prove that the debt owed to it is one which would be nondischargeable in a Chapter 7 case; (3) that the inclusion of a nondischargeable debt in a Chapter 13 plan has no application to the quantum requirement of section 1325(a)(4) in that the nondischargeability grants to the creditor only a right to pursue the collection of the debt rather than a guaranty of payment of the debt under a Chapter 7 liquidation; and (4) that the debtors' plan was submitted in good faith.

*Findings of Fact and Conclusion of Law*

■ This Court finds that although this debt is one that may be nondischargeable in a Chapter 7 case, it is not necessary at this time to decide the issue of dischargeability of the debt owed to ADR. While the court in *In Re McMinn*, 4 B.R. 150, 6 B.C.D. 297 (Bkrtcy.D.Kan.1980), favored resolution of contentions of nondischargeability on the basis of fraud prior to confirmation of a Chapter 13 plan, this Court is of the opinion that the cases subsequent to *In re McMinn*, as discussed below, have applied the more appropriate analysis to the issue.

Section 1325(a)(4) requires confirmation of a plan if it provides for distribution of property to unsecured creditors in an amount not less than the amount such creditors would receive if the estate of the debtor were liquidated under Chapter 7. This section provides a quantitative standard and a minimum payment requirement. It is impossible, however, to quantify the value of a nondischargeable debt. This Court agrees with Bankruptcy Judge Robinson's position in *In Re Walsey*, 7 B.R. 779, 781, 6 B.C.D. 1410, 1411, BLD ¶ 67740 (Bkrtcy.N.D.Ga.1980) in which he stated:

> The value of a judgment of nondischargeability would be derived from the right of a creditor to pursue the debtor in the future for collection of a debt.... It would be impractical for the Court to place a value on a creditors' right of action against a debtor. Many factors would have to be taken into consideration

such as the collectability of the judgment and the cost of taking action to collect the debt. There is no way the Bankruptcy Court could accurately estimate such things. This Court concludes that the value of the right to take action in the future to collect a nondischargeable debt is not contemplated in section 1325(a)(4) as something paid to a creditor in a Chapter 7 case.

When the Bankruptcy Court finds a debt nondischargeable in a Chapter 7 case, the debt is not necessarily paid by the trustee. A right of the creditor to pursue the debtor in the future does not always mean the creditor will be paid. It is impossible to apply the quantitative standard of section 1325(a)(4) to a contention that the debtor proposes to pay less under a Chapter 13 plan than such a creditor would receive if the debtor had filed under Chapter 7. Such a creditor may receive something in the administration of a Chapter 7 liquidation, but he *may* receive something outside the estate through his right to pursue the debtor *only if* the debtor later acquires assets.

In the case of *In Re Marlow*, 3 B.R. 305, 6 B.C.D. 77 (Bkrtcy.N.D.Ill.1980), the court addressed the issue of the inclusion of a possibly nondischargeable debt under section 523 in a Chapter 13 plan. Possible nondischargeability was determined to be a factor, though not dispositive, in determining the good faith of the debtors:

> It is possible that a plan proposing a 1% payment to unsecured creditors could be found to lack good faith even without the motive to avoid a Chapter 7 nondischargeable debt. Here, the combination of a 1% plan plus the additional bona fide threat of a nondischargeable debt is fatal. A formal adjudication on the merits of the alleged nondischargeable debt is not required.

*In Re Marlow*, 3 B.R. at 308–9, 6 B.C.D. at 79.

The same analysis was used by the court in *Koerperich*, 5 B.R. 752, 6 B.C.D. 970, 2 C.B.C.2d 1284, (Bkrtcy.D.Neb.1980), where the court rejected the assumption that a debtor is in bad faith for attempting to do what he is legally permitted to do and found that section 1325(a) allows a debtor to discharge debts that could not be discharged in a Chapter 7 proceeding. Again, the court stated that a potentially nondischargeable debt strengthens the presumption of bad faith. *See also In Re Scott*, 7 B.R. 692, 3 C.B.C.2d 417 (Bkrtcy.E.D.Pa. 1980); *In Re Minor*, 16 B.R. 147 (Bkrtcy.S. D.Ohio 1981). The issue of dischargeability is relevant in a Chapter 13 case only to the extent it bears on a determination of whether a Chapter 13 plan was proposed in good faith. Thus, the court need not make a specific factual finding concerning dischargeability.

■ The good faith standard of section 1325(a)(3) does not connote a quantitative standard. Judge Walton, Jr., in the case of *In Re Wiggles*, 7 B.R. 373, 6 B.C.D. 1326 (Bkrtcy.N.D.Ga.1980), discussed the meaning of good faith as used in section 1325(a)(3):

> The historical judicial derivation of the term connotates (*sic*) a meaning stricter than the mere absence of fraudulent, dishonest or malevolent conduct of the debtor in making the proposal. The decisions indicate that the term is not equated to and does not rise to the level of venality, dishonesty or evil acts. That is, conduct something less than venality or dishonesty may support a finding of absence of good faith.

> .    .    .    .    .

> Thus good faith as used in section 1325(a)(3) means full and complete disclosure and honesty of purpose by the debtor to consummate the payments proposed in the plan.

*In Re Wiggles*, 7 B.R. at 377, 380, 6 B.C.D. at 1325, 1331.

■ The above standard, as applied to the facts of this case, can lead to no other result than the denial of confirmation of the debtors' plan as proposed due to lack of good faith. There is evidence the debtors have understated their income. The budget as proposed is grossly inflated and contains many items, such as house maintenance in

the amount of $125.00 a month, which do not appear necessary. Other examples of an inflated budget are $350.00 a month for clothing, $500.00 a month for transportation even though Mr. Graves' gas, auto maintenance and lease car are also included in his business expenses, $515.00 a month for insurance in addition to automobile insurance of $160.00 monthly, and recreation in the amount of $200.00 a month, while Mr. Graves has also allotted $1,000.00 a month for travel and entertainment in his business expenses.

Other indicia that contribute to the flavor of bad faith is the scheme involving the corporation formed by Mr. Graves' brother-in-law for the sole purpose of becoming assignee of the first mortgage on the debtors' home. In the absence of acceptance of a Chapter 13 plan by holders of allowed secured claims or surrender by the debtor of the property securing such claims to the holders of such claims, section 1325(a)(5) requires a Chapter 13 plan to provide that the holder of an allowed secured claim retain his lien and that distribution under the plan will not be less than 100 percent of the secured amount of such claim. The amount proposed to be paid to ADR under the Graves' plan is not 100 percent of the secured portion of its claim. In fact, it is impossible to determine from the proposed plan what, if any, payments will be made under the plan to ADR. The testimony heard at trial from a professional appraiser gave the market value of the home as $112,000.00. This, excluding the claim of R. S. Properties, Inc. of $68,713.80, leaves the secured value of ADR's claim in an amount over $43,000.00. The proposed plan indicates that the home is to be sold to R. S. Properties, Inc., the first secured creditor, in full satisfaction of that debt. The property, however, is worth considerably more than the debt owed to R. S. Properties, Inc. Under the proposed plan, the property would be completely outside the reach of ADR even though it holds a judicial lien on the home, second in rank. Additionally, it is impossible to determine the percentage of unsecured claims that are to be paid under the plan.

The problems with the debtors' plan, as discussed above, when considered in light of the circumstances of this case as well as the "bona fide threat" of a nondischargeable debt owed to ADR, indicates to this Court that the plan as proposed does not comply with the good faith requirement of section 1325(a)(3).