**In the Matter of John Rubin AALTO and Jean Marie Aalto, Debtors.**

**Philip Dale TRIPLETT and Brenda Lou Triplett, Debtors,**

v.

**Elva ARNDT, Debtor.**

**Bankruptcy Nos. 79–1553 C, 79–1541 C and 79–1525 C.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

Jan. 7, 1981.

Alfred E. Johnson, N. Fort Myers, Fla., for all debtors.

Chris Larimore, Bradenton, Fla., trustee.

### ORDER DENYING CONFIRMATION OF PLANS

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS another round testing the "good faith" requirement of § 1325(a)(3) of the Bankruptcy Code. This is encouraged, no doubt, by some decisions which have construed the term "good faith" to mean nothing more than absence of an outright fraud and some decisions which construed the term "good faith" to mean neither good nor bad faith, but only a literal compliance with the Code's requirement that as long as the plan submitted by the debtor offers at least as much as creditors would receive upon liquidation, it meets the requirement of the Code and the plan should be confirmed. *In re Webb*, 3 B.R. 61, 5 BCD 1379 (Bkrtcy.N. D.Cal.1980); *In re Terry*, 3 B.R. 63, 5 BCD 1397 (Bkrtcy.W.D.Ark.1980) *rev'd sub nom. Tenney v. Terry*, 630 F.2d 634, 6 BCD 974

(8th Cir. 1980); *In re Koerperich*, 5 B.R. 752, 6 BCD 970 (Bkrtcy.D.Neb.1980); *In re Harland*, 3 B.R. 597, 6 BCD 235 (Bkrtcy.D. Neb.1980); *In re Cloutier*, 3 B.R. 584, 6 BCD 196 (Bkrtcy.D.Colo.1980).

The Debtors involved in these proceedings, Mr. and Mrs. Aalto, Mr. and Mrs. Triplett, and Ms. Arndt, filed their respective plans under Chapter 13 of the Code. Their plans, which may be characterized as zero or near zero plans, are admittedly filed for the purpose of obtaining a determinative construction by this Court of the term "good faith" required by § 1325(a)(5) of the Code for confirmation and to furnish a guideline in the future to attorneys for debtors and creditors alike concerning Chapter 13 plans. At the outset, it should be pointed out that none of these Debtors propose any treatment under their respective Chapter 13 plans of claims of secured creditors.

The facts involved in these cases are without dispute and can be summarized as follows: Mr. and Mrs. Aalto have a combined monthly income of $1,670.71. According to their budget their monthly living expenses for the family of six, which includes four minor dependents, is $1,576.18 leaving an excess of $104. It is without dispute that the Aaltos sold their residence in the State of New York and received the $6,231 as partial payment of the purchase price within the four months prior to the filing of their petition. The Aaltos claim to have spent all that money for living expenses during the short span of time before they filed their petition even though both of them were fully employed during the period in question. They have no books or records from which one could establish the nature and the true extent of their expenditures. The Aaltos scheduled 16 unsecured debts totalling $34,490.56 and all of their assets are claimed and have been set aside as exempt and it is doubtful that upon liquidation their creditors would receive anything unless the trustee is able to recover undisclosed assets. Their amended plan provides a payment to the trustee of $86.47 per month for two months to be distributed among the creditors. Such payment, if the plan is confirmed, would give a ½ of 1% dividend to their unsecured creditors.

Mr. and Mrs. Triplett's net income, including Social Security payments for two of the four children, is $1,082 per month. Mr. Triplett is the sole breadwinner. Their budget for the family of six is $1,076.10 leaving an excess of only $5.90 per month. The Triplett's have 21 unsecured creditors with claims totalling $7,060.10. All of their assets were claimed and have been set aside as exempt. There is no doubt that upon liquidation their creditors would not receive anything. The amended plan submitted by the Tripletts offers a payment of $71.60 to the trustee, but only one payment which Mr. Triplett proposes to furnish through monies earned by cutting grass. He does not propose any additional monthly payments because his employer does not tolerate moonlighting.

Ms. Arndt, a secretary employed by an insurance agency, is a single person who earns $529.32 per month. According to her budget, her monthly living expenses are $483.07 leaving an excess of $46.25. She has six unsecured creditors with claims totalling $4,581.78. According to her amended plan, she intends to pay $45.82 for three months and that would represent a 3% dividend to her unsecured creditors. Ms. Arndt is not head of a household and, therefore, is not entitled to any exemptions, but according to her schedules her total assets are less than $60. Ms. Arndt testified that she intends to pay the $45.82 only for three months because she has plans to marry and her fiance does not want her to continue to work.

The foregoing are the matters relevant to the proposed plans against which this Court must test the "good faith" of these Debtors who seek rehabilitation under this Chapter.

It is the contention of the trustee that this Court should not encourage nominal payment plans especially when it appears that the plans have been submitted solely for the purpose of gaining advantage of the broadened and more liberal Chapter 13 discharge provisions. The trustee contends

that plans providing token offerings by debtors in exchange for the benefits of Chapter 13 discharges are not filed in "good faith" and should not be confirmed. None of these plans are zero plans, i. e. plans which provide no payment whatsoever to unsecured creditors. cf *In re Cook*, 3 B.R. 480, 1 CBC 2d 780 (Bkrtcy.S.D.W.Va.1980); *In re Terry, supra; In re Sadler*, 3 B.R. 536, 1 CBC 2d 935 (Bkrtcy.E.D.Ark.1980) and *In re Thebeau*, 3 B.R. 537, 1 CBC 2d 940 (Bkrtcy.E.D.Ark.1980).

It is conceded by all, including counsel for the debtors, that a finding that these plans were proposed in good faith is a condition precedent to the confirmation of a Chapter 13 plan by virtue of § 1325(a)(3).

The difficulty stems from the fact that the Code does not define the term "good faith" neither does the legislative history shed any light on the congressional intent with regard to good faith requirements of the Chapter. It is, therefore, not surprising that courts produced widely varied answers to the question what is "good faith" within the meaning of the Code.

■ Since the Code has no definition of the term "good faith" it is reasonable to construe the term in the context of the pre-Code Chapter XIII as well as by considering the entire scheme of the new Chapter 13 and its legislative history. Considering this last source first, it is apparent that Congress envisioned that debtors would pay a substantial amount to creditors under plans proposed by debtors and Congress intended to encourage payment plans under which all creditors would be paid most, if not all, of their claims over an extended period.

The Senate Report accompanying S. 2266 indicates that debtors were to provide a reasonable plan for repayment of debts under this Chapter and a plan proposed under Chapter 13 should propose a substantial repayment of unsecured debts. *S.Rep. 95–989, 95th Cong., 2d Sess. at 13 (1978)*, U.S. Code Cong. & Admin.News 1978, p. 5787. In fact, the entire scheme of the Code indicates that it was designed to serve as an incentive for higher payment plans under this Chapter. This should be evident when one considers § 727(a)(9) of the Bankruptcy Code which permits a discharge under Chapter 7 to a debtor who within 6 years obtained a Chapter 13 discharge, but only if 100% of the allowed unsecured claims were paid or at least 70% of such claims were paid and the plan was proposed in "good faith" and it was the debtor's "best effort." It is noteworthy that the Senate Report states "it is also necessary to prevent Chapter 13 plans from turning into mere offers of composition plans under which payments would equal only the non-exempt assets of the debtor." *S.Rep. 95–989, 95th Cong., 2d Sess. at 13 (1978)*, U.S.Code Cong. & Admin. News 1978, p. 5799.

■ It is true that § 727(a)(9) of the Code includes the concept of "best efforts" which is also part in some form of the Technical Amendments Bill of 1980, S. 658 passed by the Senate on September 11, 1980 and the House version of the same bill passed on September 22, 1980. The Senate version requires the debtor's "best effort" for confirmation, and the House version requires that a plan represents the debtor's "good faith effort." In fairness, it should be pointed out that Congress failed to act before it adjourned on the Technical Amendments Bill, but both versions are indicative of the dissatisfaction by Congress with the present version of § 1325 which spawned this inordinate amount of litigation producing such a wide variety of the results. Be that as it may, the section as written today, leaves no doubt that while the best effort is not technically an indispensable condition precedent to the confirmation of a plan under Chapter 13, *In re Burrell*, 6 B.R. 360, 5 CBC 900, 903 (Bkrtcy.N.D.Cal.1980) and *In re Powell*, 2 B.R. 314, 5 BCD 1233 (Bkrtcy.E.D.Va.1980), it is a factor which must be taken into consideration by the court and should not be ignored. On the other hand, there is no doubt that the term "good faith" should not be construed with a rigid reference to the concept of "best efforts" or with reference to the "good faith" effort. The "good faith" requirement of the Code must be interpreted flexibly con-

sidering the totality of the circumstances of a particular debtor.

In this context, the court should consider not only the budget submitted by the debtor, but also whether or not such a budget is reasonable, fair, and realistic; whether or not the debtor's income is stable enough to fund the plan; the total amount of outstanding obligations to be dealt with by the plan; the percentage of the proposed repayment plan; and the nature of the debts sought to be discharged under the liberal and broadened discharge provisions of this Chapter. *In re Iacovoni,* 2 B.R. 256, 5 BCD 1270, 1277 (Bkrtcy.D.Utah 1980). In sum, a debtor who attempts to deal fairly and honestly with his creditors and who offers meaningful payments under the plan, commensurate with his ability to live up to the obligations undertaken, should not be deprived of this Chapter's benefits. Moreover, if some of the debts are not, or may not be dischargeable, but the debtor pays a substantial price for the liberal relief he gets under Chapter 13, he should be able to obtain a confirmation of the plan even though the plan does not pay 100 cents on the dollar nor any fixed percentage. cf *In re Burrell, supra* which required at least a 70% minimum payment to unsecured creditors.

On the other hand, one should not have any difficulty in finding lack of "good faith" if the payment offered by the debtor under the plan is obviously a mere token and does not represent a meaningful economic benefit to creditors. For example, there is certainly no sincere effort to treat creditors fairly in cases where the payment proposed by the debtor amounts to nothing more than a disguised liquidation Chapter 7 case filed only for the sole purpose of taking advantage of the more liberal and broadened discharge provisions available to debtors under Chapter 13, § 1328(c), because the debtor is tainted and his general right to a discharge, or the dischargeability of a specific debt, would likely be subject to challenge either under § 523 or § 727 of the Bankruptcy Code.

The absence of "good faith" in some situations is even more obvious when the payment offered is not only minimal and token, but is also only a single payment. In such a situation, one is not hard pressed to conclude that a debtor did not intend to deal fairly with his creditors and it is obvious that the debtor filed his Chapter 13 plan for the sole purpose of escaping nondischargeability provisions of Chapter 7 by throwing meaningless morsels to his creditors.

On the other hand, this does not mean that there are any provisions in the Code which prohibit confirmation of a plan which calls for a single payment, although the Code generally throughout the relevant sections, refers to "payments" rather than "payment." See e. g., the following sections: § 101(24); § 325(b); § 1325(a)(6); § 1326; and § 1328(a), (b). See *In re Hurd,* 6 B.R. 329, 3 B.L.Rep. ¶ 67,635 (Bkrtcy.N.D.Ind.1980). See also, *H.R.Rep. 95–595, 95th Cong., 1st Sess. at 118 (1977),* "the purpose of Chapter 13 is to enable an individual under court supervision and protection, to develop and perform under a plan of repayment of his debts over an extended period." There is hardly any doubt that the entire scheme of Chapter 13 indicates a preference for payments over an extended period of time rather than a single lump sum payment and only Chapter 13 plans which propose a single payment plan that is meaningful, i. e. close to full repayment of the debts owed, not a mere pittance, should be confirmed.

In the recent decision considering this particular question, the Court for the Northern District of Georgia (Judge Norton) gave an extensive treatment of the question and concluded that the term "good faith" has no connotation to feasibility of a plan; does not have a quantitative meaning; and does not include the concept of best effort.

| William Grant Wiggles | 80–01782A |
| Carolyn Leaks Latta | 80–01834A |
| Larry Uzzell Rowe • | 80–01773A |
| Larry Vann White | 80–01729A |
| Robert P. McElhannon | 80–02736A |
| George William Ball | 80–02170A |

The Court in these cases, which are yet unreported, concluded that the elements of good faith are nothing more than a conduct which is not forbidden by law, which reflects "honesty of purpose", a "full and complete disclosure" and basically has the same meaning as that term used in pre-Code Chapter XI cases. While the foregoing, no doubt, with the exception of the last, could be possibly considered to be part of the concept of good faith, it is evident that the meaning of the term as used in Chapter 13 cases cannot and should not be equated with the meaning of the term used in a Chapter XI case.

■ In a Chapter 13 case there is no "full and complete disclosure" requirement in the technical sense; there is no disclosure statement filed; there are no creditors committees; and there is no vote, or any sort of control of the plan by creditors. To assume that a Chapter 13 statement filed by the Debtor either as a matter of law or as a matter of fact is equivalent to a full and complete disclosure requirement in a Chapter 11 case ignores realities of life. Next, to limit the meaning of the term "good faith" to "honesty of purpose", whatever that term means, would represent a standard which is not only highly unrealistic, but to say the least is esoteric and incapable of any sort of precise definition. For instance, one cannot dispute that a debtor who is tainted and subject to a charge of fraud does not have an honesty of purpose when he files a Chapter 13 case with a token plan in order to gain benefits of the liberal discharge provisions of this Chapter. To assume that this was the intent of Congress would impute a callous and cynical philosophy to Congress which is unwarranted and not supported by any part of legislative history. *H.R. 95–595, 95th Cong., 1st Sess. (1977)*; S. *Rep. 95–989, 95th Cong., 2d Sess. (1978)*. This Court is constrained to conclude that to equate the term "good faith" with full disclosure or with "honesty of purpose" would not lend any historical or logical support of the policy aims as expressed by the legislative history of this Chapter.

Viewing these three cases in light of the foregoing general principles, this Court is satisfied that none of these plans can be confirmed for the following reasons:

■ The plan filed by the Aaltos proposes a ½ of 1% payment to the unsecured creditors which does not demonstrate sufficient intent on the part of the Debtors to make a "good faith" proposal to deal fairly and adequately with their creditors. The Aaltos, before moving to Florida, as noted earlier, sold their home in New York and realized for the equity more than $16,000. While it is true that the bulk of the sum was received by them, more than a year ago, and only about $6,000 was received a few months before they filed their bankruptcy petition, the fact remains that they both obtained employment almost immediately upon their arrival in Florida and they failed to explain satisfactorily the disposition of these funds. Thus, it is not unlikely that their right to a discharge would have been challenged under § 727(a)(5), had they filed their petition under Chapter 7. While this Court declines to impose the standards required by § 727(a)(5) of the Code, there certainly should be a greater payment by debtors who have obviously filed their petition under Chapter 13 for the purpose of taking advantage of the liberal provisions of Chapter 13.

■ Considering the proposed payment plan filed by the Tripletts, a single minimum payment offered by them is nothing more than an attempt to camouflage a Chapter 7 liquidation case under the wrapping of a Chapter 13 clothing. *In re Bellegraph*, 4 B.R. 421, 2 CBC 2d 1057 (Bkrtcy. W.D.N.Y.1980). As stated earlier, the Code, while it does not prohibit single payment plans, it does have a marked preference for multiple payments from the Debtors' future earnings over an extended period of time. As stated in *In re Cook, supra* although Congress permitted the Debtor to have great flexibility in proposing his Chapter 13 plan and although the creditors are powerless to veto a plan, formulation of a plan is not left to the Debtor's "unbridled imagination." This Court is satisfied that

the single payment plan proposed is not meaningful as outlined above and the proposal lacks "good faith."

Finally, the plan proposed by Ms. Arndt, although the most generous of the three plans presently being considered by this Court, it lacks the necessary prerequisites to confirmation inasmuch as a 3% dividend cannot be considered anything more than a de minimis payment and does not sufficiently distinguish the proposed plan from what appears would be more appropriately handled under a Chapter 7 liquidation. It, therefore, lacks the necessary prerequisite of good faith and fails to attempt to deal meaningfully with the Debtor's creditors.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that confirmation of the proposed Chapter 13 plans filed by John Rubin Aalto and Jean Marie Aalto; Philip Dale Triplett and Brenda Lou Triplett; and Elva Arndt be, and the same hereby are denied without prejudice to the Debtors' rights to file amended plans within 15 days from the date of entry of this Order.