**In re Brij M. MITRUKA and Vicky A. Mitruka, Debtors.**

**Bankruptcy No. 80–02278G.**

United States Bankruptcy Court,
E. D. Pennsylvania.

April 16, 1982.

Edward C. Toole, Jr., Nancy V. Alquist, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for debtors, Brij M. Mitruka and Vicky A. Mitruka.

William A. Harvey, Michael J. Viscount, Jr., Fellheimer, Eichen & Goodman, Philadelphia, Pa., for Nat. Bank of Boyertown, objecting creditors.

James J. O'Connell, Philadelphia, Pa., trustee.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before the court is whether a chapter 13 plan which proposes to make a single lump sum payment of 5.5% of the debtors' unsecured claims is made in "good faith" as required by § 1325(a)(3) of the Bankruptcy Code, so that we may confirm the debtors' proposed plan. We conclude that such a payment does not meet the good faith requirement and must therefore deny confirmation.

The facts of this case are as follows:[1] In September, 1980, Brij M. and Vicky A. Mitruka ("the debtors") who are both medical doctors, filed a voluntary petition for relief under chapter 13 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1301 et seq. ("the Code"). In due course a plan was filed to which the National Bank of Boyertown ("the bank") filed objections.

The plan lists the total amount of undisputed claims as $88,099.34. Of this, $3,852.12 are priority claims, $46,440.32 are undisputed secured claims, and $37,806.90

---

1. This opinion constitutes findings of fact and conclusions of law as required by Rule 752 of the Bankruptcy Rules of Procedure.

are undisputed unsecured claims.[2] Listed are also several disputed unsecured debts among which is an unsecured claim of the bank in the amount of $52,155.86, to which, however, no objection has been filed.

The total amount of the debtors' assets is listed as $71,707.04, of which $17,843.60 is claimed as exempt property. Their monthly income aggregates $3,264.67, while their monthly expenses are $3,171.85, leaving a net of $92.82 per month.

The plan proposes to pay secured creditors in full outside the plan and to pay priority claims, secured creditors, attorneys' fees of $2,000, and trustee's commissions of $885 from a single lump sum payment of $8,850.31.[3] Once priority claims, fees, and commissions are deducted from this amount, $2,113.19 is left for unsecured creditors, or 5.5% on the undisputed unsecured claims and 2.3% on the secured claims, including the claim of the bank.

The plan also proposes to avoid certain liens in accordance with 11 U.S.C. § 522(f).[4] Among these is a cognovit note judgment lien filed by the bank which attached to the debtors' residential property. The bank's unsecured claim arises from this transaction.

After a meeting of creditors pursuant to 11 U.S.C. § 341(a), the trustee filed his report recommending confirmation of debtors' proposed plan. The bank thereupon filed timely objections which are now at issue before us.

The bank objects to the plan as not being proposed in good faith and argues that, unless we determine that the plan has been so proposed we may not confirm it.[5] The issue of what is good faith, however, has been left to the courts to decide on a case-by-case basis in light of the facts and circumstances of each case.[6]

The plan in the case at bench proposes that a single lump sum payment be made to the trustee for the benefit of the unsecured creditors. The issue is, therefore, whether the single payment plan, proposed in this case is proffered in good faith.

The Code contemplates (plural) "payments" rather than (a singular) "payment" in chapter 13 cases. See e.g., the following sections: § 101(24); § 1325(a)(6); § 1326, and § 1328(a), (b). *In re Aalto,* 8 B.R. 157, 161 (Bkrtcy.M.D.Fla.1981). Further, § 102(7) states ". . . the singular includes the plural, . . ." but the legislative history to this section clearly states:

> Paragraph (7) specified that the singular includes the plural. *The plural, however, generally does not include the singular.* The bill uses only the singular, even when the item in question most often is found in plural quantities, in order to avoid the confusion possible if both rules of construction applied. *When*

---

**2.** Of these unsecured claims, $31,109 are educational loans which would not be dischargeable under chapter 7 of the code.

**3.** This amount represents a portion of the refund due the debtors on their 1980 Federal Income Tax and received by the debtors subsequent to the filing of their petition.

**4.** 11 U.S.C. § 522(f) provides:
> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
> (1) a judicial lien; or
> (2) a nonpossessory, nonpurchase-money security interest in any—

> (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
> (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
> (C) professionally prescribed health aids for the debtor or a dependent of the debtor.

**5.** 11 U.S.C. § 1325(a)(3) provides: "the court shall confirm a plan if . . . (3) the plan has been proposed in good faith and not by any means forbidden by law."

**6.** *In re Rimgale,* 669 F.2d 426, 5 Collier Bankr. Cas.2d (MG) 1281, 1288 (7th Cir. 1982), *In re Schongalla,* 4 B.R. 360 (Bkrtcy.D.Md.1980).

*an item is specified in the plural, the plural is intended.* (Emphasis added).[7]

We do not, however, believe that this is dispositive of the issue. Nowhere in the code does it state that more than one payment must be made to constitute the payments under the plan. For example, § 1325(a)(6) requires that the debtor be able to make all payments under the plan before the plan may be confirmed. If a single lump sum payment is proposed, that constitutes all of the payments under the plan.

To take this any other way would mean that debtors might be able to avoid the lack of good faith label on a lump sum payment by dividing the payment into two halves and paying each half at a different time. This would avoid the problem of having to make more than one payment, but would not give the creditors any more than they could have had if we were to allow a single lump sum payment. It would be exalting form over substance.

One well-reasoned case dealing with a single payment plan is *In re Aalto, supra,* which involved three jointly administered cases in which separate plans had been filed. None of these plans proposed to pay unsecured creditors more than a three percent dividend. One plan proposed to make one lump sum payment while the other two plans proposed to make two and three payments repayments respectively. The court found that each plan lacked good faith. However, it stated, "... [t]his does not mean that there are any provisions in the Code which prohibit confirmation of a plan which calls for a single payment...." 8 B.R. at 161.

While we conclude that a single lump sum payment would not *per se* prohibit confirmation of a chapter 13 plan, this does not terminate our inquiry into whether such a plan was proposed in good faith.

The fact that a single payment plan has been proposed must be looked at in conjunction with the other facts and circumstances surrounding the case. The *Aalto* court held that

... One should not have any difficulty in finding lack of "good faith" if the payment offered by the debtor under the plan is obviously a mere token and does not represent a meaningful economic benefit to creditors. For example, there is certainly no sincere effort to treat creditors fairly in cases where the payment proposed by the debtor amounts to nothing more than a disguised liquidation chapter 7 case filed only for the sole purpose of taking advantage of the more liberal and broadening discharge provisions available to debtors under chapter 13, § 1328(c), because the debtor is tainted and his general right to a discharge, or the dischargeability of a specific debt, would likely be subject to challenge either under § 523 or § 727 of the Bankruptcy Code.

The absence of "good faith" in some situations is even more obvious when the payment offered is not only minimal and token, but is also only a single payment. In such a situation, one is not hard pressed to conclude that a debtor did not intend to deal fairly with his creditors and it is obvious that the debtor filed his chapter 13 plan for the sole purpose of escaping nondischargeability provisions of chapter 7 by throwing meaningless morsels to their creditors.

... There is hardly any doubt that the entire scheme of chapter 13 indicates a preference for payments over an extended period of time rather than a single lump sum payment and only chapter 13 plans which propose a single payment plan which is meaningful, i.e., close to full repayment of the debts owed, not a mere pittance, should be confirmed.[8]

---

7. House Report No. 95-595, 95th Cong. 1st Sess. (1977) 316; Senate Report No. 95–989, 95th Cong., 2nd Sess. (1978) 28, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5814, 6273.

8. 8 Bankr. at 161.

By their own admission, the debtors in the instant case propose to pay unsecured creditors a 5.5% dividend (the objecting creditor claims that the dividend will be even less). We do not construe such a dividend to be a "meaningful" repayment within the context of the *Aalto* case.

Other factors also weigh against the confirmation of this plan. The debtors' source of their proposed payment is a tax refund for 1980. Since the debtors filed their petition in September, 1980, a large portion of this asset (at least two-thirds) is sufficiently rooted in pre-petition property to be included in the debtors' estate under § 541 of the Code.[9] For at least this portion, therefore, the debtors were not giving the creditors anything more than that to which they would be entitled if the estate of the debtors were liquidated under chapter 7 of the Code: See § 1325(a)(4).

What is more, $31,109 of the debtors' unsecured debts (out of a total of $37,806.90) which is to be discharged is for educational loans which would not be discharged under chapter 7.[10] We find, as in *Aalto*, that the debtors' plan is within the language of *Aalto* in that it attempts to escape the nondischargeability provisions of chapter 7 by "throwing meaningless morsels to the creditors."

Accordingly, we conclude that the debtors' second modified chapter 13 plan was not proposed in good faith within the meaning of § 1325(a)(3) and we will deny confirmation.

---

**9.** See: *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), *Matter of Nichols,* 4 B.R. 711 (Bkrtcy.E.D.Mich.1980), *In re Crum,* 6 B.R. 138 (Bkrtcy.M.D.Fla.1980) (Paskay, B.J.), *In re Ballou,* 12 B.R. 611 (Bkrtcy.D.Kan.1981).

**10.** *See:* 11 U.S.C. § 1328(a) & § 523(a)(8).